[Civ. No. 19232. Fourth Dist., Div. Two. Mar. 14, 1979.]

HELEN L. GORMAN, Plaintiff and Appellant, v.
HAROLD J. GORMAN, Defendant and Appellant;
GORDON T. SHEPARD, Defendant and Respondent.

## Counsel

Bush, Bush & Larsen and K. Dale Bush for Plaintiff and Appellant.

Paul M. Bell and Kathleen E. Endres for Defendant and Appellant.

Gordon T. Shepard, in pro. per., for Defendant and Respondent.

## Opinion

**KAUFMAN, J.**—Plaintiff Helen L. Gorman and defendant Harold J. Gorman were formerly married to each other and will be referred to in this opinion as former wife and former husband. In 1972, former wife employed defendant Gordon T. Shepard, an attorney, to represent her in an action to secure a dissolution of the marriage. Default proceedings were had and the marriage was dissolved in 1972 by an interlocutory judgment entered May 3 and a final judgment entered October 26 in the Orange County Superior Court. Prior to the separation of the parties on March 22, 1972, former husband had retired from the military service, and at the time of the dissolution was receiving monthly payments on account of longevity retirement from the military service, payable for life.[1] The interest in the military retirement was not included in the property listed in former wife's petition for dissolution of marriage and,

---

[1]Former husband's military retirement was based upon 21½ years of service during which he was married to former wife for 17½ years. As of the date of separation husband was receiving $280 per month. There was evidence at trial that the amount received had increased from time to time until at the time of trial of the instant action he was receiving approximately $435 per month. This evidence, however, was admitted only as to defendant Shepard. Former husband's defense was submitted to the court on stipulated documentary evidence and points and authorities at the commencement of the trial. The evidence alluded to was subsequently introduced in the course of the trial between former wife and Shepard and, not having been included within the stipulation for submission of the case as to former husband, could not be considered by the court as against him.

although the fact that former husband was receiving military retirement pay was expressly mentioned in the default hearing in connection with spousal and child support,[2] the petition was not amended and the interest in the retirement benefits was neither mentioned nor disposed of in either the interlocutory or final judgments of dissolution.

On May 28, 1975, former wife instituted the instant action against Shepard for damages, alleging his professional negligence in representing her in the dissolution proceeding based on his failure to assert a community property interest in the military retirement benefits. On June 18, 1975, former wife filed a motion in the dissolution action, apparently under Code of Civil Procedure section 473, requesting the court to determine and divide the community property interest in the retirement benefits and modify the judgment in the dissolution action accordingly. Former husband opposed the motion primarily on the ground that the court lacked jurisdiction under Code of Civil Procedure section 473 inasmuch as more than six months had passed since the entry of the final judgment of dissolution. On July 23, 1975, former wife's motion was denied. On March 24, 1976, former wife filed in the instant action a motion for leave to amend her original complaint to add a second cause of action against former husband for division of the interest in the retirement benefits. The motion was granted and the complaint was so amended.

Trial was to the court. Although no party requested findings of fact and conclusions of law and, thus, none were made, the court issued a formal, detailed memorandum of intended decision that fully disclosed its findings and conclusions. It found that at the time of the separation of the parties, the community property interest in the military retirement amounted to 17.5/21.5; that defendant Shepard was negligent in failing to advise former wife that this interest constituted community property and in failing to see that this community property asset was divided in the dissolution proceeding; that from May 3, 1972, to June 1, 1977, former husband received $21,047.14 in retirement pay and on the basis of that sum, plus a sum computed on the basis of former husband's 22½-year life expectancy and anticipated future cost-of-living increases averaging 6 percent per year, former wife's interest in past and future retirement benefits had a present value of $56,062.64; that Shepard's negligence was the proximate cause of damages to former wife in that sum in addition to "further detriment to plaintiff in not having the use of her share of the

military retirement pension for several years last past." The court concluded, however, that by reason of its intended decision to render judgment against former husband for the payment of most of these sums,[3] "the $56,062.64 in damages is completely offset." The court then assessed damages for the previously mentioned "further detriment" together with nominal damages for Shepard's negligence at $1.00. The court also concluded that inasmuch as the military retirement benefits were 17.5/21.5 community property, there was no alternative but to apportion one-half of that fraction of this asset to former husband and one-half to former wife. Accordingly, the court announced its intention to enter judgment against former husband "for the sum of money equal to ½ times 17.5/21.5 times $280.00 times the number of months from May 9, 1972, to date of formal judgment herein, together with judgment for ½ times 17.5/21.5 times the amount of each monthly military retirement pension payment received by defendant [former husband] after the date of formal judgment herein payable by defendant to plaintiff within 10 days of defendant's receipt of each such payment. The Court retains jurisdiction to require an accounting by defendant as to all such future payments." (See fn. 3, *ante.*)

On October 7, 1977, judgment was entered in favor of former wife against defendant Shepard in the amount of $1 and against former husband in language identical to that quoted above from the notice of intended decision.

Former husband appeals from the judgment against him contending that (1) military retirement benefits do not constitute community property divisible upon dissolution and (2) former wife is precluded by res judicata from seeking relief against him in the present action. Former wife cross-appeals from the judgment against defendant Shepard contending that it was error for the court to render judgment against Shepard for only $1 when it found the damages proximately caused by him amounted to $56,062.64 and that the judgment against Shepard should have been for the full amount of damages. Shepard has filed a brief in which he asserts that plaintiff's recovery against him was barred by the statute of limitations, by plaintiff's failure to plead his negligence subsequent to the original negligence in failing to list an interest in the retirement benefits as community property in the dissolution petition and by her failure to prove that she suffered any loss caused by his negligence.

---

[3]Because the evidence of the increased amount of payments due to cost-of-living adjustments was admitted only as to defendant Shepard (see fn. 1, *ante*), the intended judgment against former husband was based on the receipt by him of only $280 per month rather than the true amount of the augmented payments.

*Former Husband's Appeal*

*Community Property*

■ It is of course established California law that military retirement pay constitutes community property divisible upon dissolution of a marriage to the extent earned during the marriage. (*In re Marriage of Fithian,* 10 Cal.3d 592, 596, 604 [111 Cal.Rptr. 369, 517 P.2d 449] [language distinguishing "vested" from "nonvested" rights disapproved in *In re Marriage of Brown,* 15 Cal.3d 838, 851, fn. 14 [126 Cal.Rptr. 633, 544 P.2d 561]].) Former husband contends, however, that the *Fithian* decision has been overruled in effect by the recent United States Supreme Court decision in *Hisquierdo* v. *Hisquierdo,* 439 U.S. 572 [59 L.Ed.2d 1, 99 S.Ct. 802]. We do not agree.

*Hisquierdo* involved an employee spouse's right to retirement benefits under the Railroad Retirement Act of 1974 (45 U.S.C. § 231 et seq.). Reversing a decision of the California Supreme Court holding such retirement rights earned during marriage to be community property divisible upon dissolution of the marriage (*In re Marriage of Hisquierdo,* 19 Cal.3d 613 [139 Cal.Rptr. 590, 566 P.2d 224]), the United States Supreme Court held that the intent of Congress in providing such benefits was clearly inconsistent with their division upon dissolution of the marriage of the employee spouse and that the community property principles of the State of California must give way under the supremacy clause (U. S. Const., art. VI, cl. 2). The high court's conclusions, however, were based upon the unique history and structure of the Railroad Retirement Act and specific provisions of the act which were felt to be indicative of the Congressional intent. The court pointed out that the statutory scheme resembles both a private pension program and a social welfare plan, is funded by a special tax paid both by employees and employers in the railroad industry, is substantially related to and correlated with the Social Security system, and, like Social Security benefits, are not contractual and may be altered or even eliminated by Congress at any time. (439 U.S. at pp. 573-575 [59 L.Ed.2d at pp. 6-7, 99 S.Ct. at pp. 804-805].)

The statutory scheme contains an express provision prohibiting assignment or anticipation of the payment of benefits under the act: "Notwithstanding any other law of the United States, or of any State, . . . no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any

circumstances whatsoever, *nor shall the payment thereof be anticipated* . . . ." (45 U.S.C. § 231m; italics added.)

In addition, the act specifically provides benefits for a spouse of a covered employee (45 U.S.C. § 231a(c)) but specifically provides that those benefits ". . . shall end on the last day of the month preceding the month in which . . . the spouse and the individual are absolutely divorced . . . ." (45 U.S.C. § 231d(c)(3).) Referring to this quoted provision, the court in *Hisquierdo* stated: "The choice was deliberate. When the Act was revised in 1974, a proposal was made to award a divorced spouse a benefit like that available to a divorced spouse under the Social Security Act. The labor-management negotiation committee, however, rejected that proposal, and Congress ratified its decision. It based its conclusion on the perilous financial state of the Railroad Retirement Account, and the need to devote funds to other purposes." (439 U.S. at p. 585 [59 L.Ed.2d at p. 13, 99 S.Ct. at p. 810], fn. omitted.)

It is true that the court placed considerable emphasis on the nonassignability clause and in that connection quoted with approval certain language of the court in *Wissner* v. *Wissner,* 338 U.S. 655, 660 [94 L.Ed. 424, 429, 70 S.Ct. 398, 400]. (99 S.Ct. at p. 811.) However, the nonassignability provision applicable to military retirement pay is somewhat narrower. It provides: "No annuity payable under this subchapter [§§ 1431-1446] is assignable or subject to execution, levy, attachment, garnishment, or other legal process." (10 U.S.C. § 1440.) This language is virtually identical to the language found in California Government Code section 21201, which the California Supreme Court has specifically held does not preclude division upon dissolution of marriage, because a spouse claims not as a creditor but as an owner. (*Phillipson* v. *Board of Administration,* 3 Cal.3d 32, 43-44 [89 Cal.Rptr. 61, 473 P.2d 765] [language distinguishing "vested" from "nonvested" rights disapproved in *In re Marriage of Brown, supra,* 15 Cal.3d at p. 851, fn. 14]; cf. *In re Marriage of Fithian, supra,* 10 Cal.3d at pp. 602-603.) It is true that that rationale appears to have been rejected in *Hisquierdo.* (See 439 U.S. at pp. 583-587 [59 L.Ed.2d at pp. 12-14, 99 S.Ct. at pp. 809-811].) However, in *Hisquierdo* the court placed some reliance on the statutory prohibition against "anticipation" of payments under the Railroad Retirement Act (see 439 U.S. at pp. 575-576, — [59 L.Ed.2d at pp. 7, 12-14, 99 S.Ct. at pp. 805, 807, 809-811]) which is not included in the nonassignability statute applicable to military retirement pay, and, furthermore, the rejection of the "claim of ownership" rationale in *Hisquierdo* was virtually required once the court had concluded that under the statutory scheme, the spouse

of the covered employee obtains no property interest in the employee's right to railroad retirement pay. Moreover, the *Hisquierdo* decision appears to us to be based upon the totality of the statutory scheme for railroad retirement benefits including its special tax funding, and its unique provisions and legislative history indicating that upon dissolution of marriage the nonemployee spouse should receive no part of the employee spouse's benefits.

We conclude that *Hisquierdo* does not control the determination as to whether military retirement benefits constitute community property divisible upon dissolution, and pending further consideration of the issue by the California Supreme Court, its decision in *Fithian* constitutes a precedent we are bound to follow.

*Res Judicata*

It is difficult to understand whether former husband is contending that the res judicata effect he is asserting derives from the judgment of dissolution of marriage or the order denying former wife's belated motion in the dissolution action for determination and division of the community property interest in the military retirement and modification of the judgment of dissolution accordingly. In his brief at one point it is stated: "Although the issue of the military retirement was not addressed or adjudged in the dissolution proceeding, the motion filed some three years later requested the court address the issue and divide the military retirement, [and] said motion was denied." In either case, the contention is not meritorious.

The order denying former wife's belated motion in the dissolution action is easily disposed of. As determined by the trial court, former husband opposed the motion primarily on the ground that the court lacked jurisdiction under Code of Civil Procedure section 473 since the final judgment of dissolution had been entered more than six months earlier, and the dissolution court denied former wife's belated motion on that ground. ■ An order denying a motion or dismissing a proceeding for procedural reasons such as lack of jurisdiction is not res judicata as to the merits of any underlying substantive question. (*Nichols* v. *Canoga Industries*, 83 Cal.App.3d 956, 967 [148 Cal.Rptr. 459]; see *GMS Properties, Inc.* v. *Superior Court*, 219 Cal.App.2d 407, 414-415 [33 Cal.Rptr. 163]; Rest., Judgments, § 49; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 168, pp. 3310-3311.)

 We turn to the question of whether former wife is precluded from obtaining relief against former husband by virtue of the res judicata effect of the judgment of dissolution. Former husband relies on *Kelley* v. *Kelley*, 73 Cal.App.3d 672 [141 Cal.Rptr. 33]. To the extent the *Kelley* decision purports to be based upon the doctrine of res judicata rather than some other form of estoppel, we do not agree with it. We have previously observed the conflict between the *Kelley* decision on the one hand and *Lewis* v. *Superior Court,* 77 Cal.App.3d 844 [144 Cal.Rptr. 1] and a host of other cases on the other, and have announced our decision to follow *Lewis* and the overwhelming weight of authority it represents. (*In re Marriage of Bridges,* 82 Cal.App.3d 976, 978-980 [147 Cal.Rptr. 471].)

If the decision in *Kelley* is sound, its true basis must be an estoppel other than res judicata. In that case the wife was fully aware of the husband's retired status and the pension rights. With the aid of a do-it-yourself marriage dissolution book, she drafted and typed a marital settlement agreement negotiated by her and the husband. During the negotiations the wife pointed out to the husband that the retirement payments he would be receiving (the full amount) would enable him to pay the $200 per month child support he eventually agreed to. The husband signed an appearance and waiver in the dissolution proceeding. The petition for dissolution made no mention of the parties' property except that a check was made in the box on the petition form next to the printed entry reading: "All property otherwise subject to disposition by the court in this proceeding has been disposed of by written agreement of the parties." The agreement was submitted to the court for approval. The judgment approved the agreement and ordered the parties to carry out its terms. The community property interest in the retirement benefits was, of course, not expressly mentioned in the agreement nor in the judgment, but the agreement purported to settle all the marital rights of the parties. Perhaps the court felt that having full knowledge of the retirement benefits, having persuaded the husband to agree to pay $200 per month in child support on the basis of his receipt of the full amount of the retirement payments, and having drafted the agreement and accepted the benefits of the judgment, the wife was estopped to assert her interest in the retirement benefits against the husband who, by signing an appearance and waiver and foregoing litigation, had relied on the tacit agreement of the parties concerning the retirement benefits, on the agreement drafted by the wife and on the wife's pleading that all community assets had been disposed of by agreement.

However, the *Kelley* court's res judicata analysis was faulty. Quoting from *Sutphin* v. *Speik,* 15 Cal.2d 195, 202 [99 P.2d 652, 101 P.2d 497], and citing *Avery* v. *Avery,* 10 Cal.App.3d 525, 529 [89 Cal.Rptr. 195], the *Kelley* court stated: " 'If the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.' The reason for this rule is obvious. [¶] '. . . . A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable. . . .' " (73 Cal.App.3d at p. 677; italics in the original.) The quoted rules might have been appropriate to a discussion of the res judicata effects of merger or bar arising out of successive litigation of the same cause of action, inasmuch as these aspects of res judicata implicate the rule prohibiting a party from splitting a cause of action or successively litigating the same right of action or defense. (See *Lewis* v. *Superior Court, supra,* 77 Cal.App.3d at p. 852, fn. 2; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 189, 190, 191, 192, pp. 3329-3332.) ■ But where, as in *Kelley* and the case at bench, the causes of action in the successive lawsuits are not the same and it is contended that an issue determined in the prior suit is res judicata on the same issue in the subsequent action, the claim of res judicata cannot prevail unless the issue was actually litigated in the earlier action. (*Clark* v. *Lesher,* 46 Cal.2d 874, 880-881 [299 P.2d 865]; *Todhunter* v. *Smith,* 219 Cal. 690, 695 [28 P.2d 916]; see *Murphy* v. *Allstate Ins. Co.,* 83 Cal.App.3d 38, 53 [147 Cal.Rptr. 565]; *Myers* v. *County of Orange,* 6 Cal.App.3d 626, 633 [86 Cal.Rptr. 198]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 197, pp. 3335-3336.) "The prior judgment is not a complete bar, but it 'operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' (*Todhunter* v. *Smith,* 219 Cal. 690, 695 [28 P.2d 916].) This aspect of the doctrine of res judicata, now commonly referred to as the doctrine of collateral estoppel, is confined to issues actually litigated." (*Clark* v. *Lesher, supra,* 46 Cal.2d at p. 880.)

■ As previously indicated in the quote from former husband's brief, he concedes "the military retirement was not addressed or adjudged in the dissolution proceeding." Neither was it in *Kelley,* and the *Kelley* court's conclusion that the issue was nevertheless foreclosed by principles of res judicata was unsound. When one of several community property assets is not listed in the pleadings and is not disposed of by the

judgment of dissolution, it becomes the property of the parties as tenants in common and is subject to partition in a subsequent, independent action between the parties. (*In re Marriage of Bridges, supra,* 82 Cal.App.3d at pp. 978-979, 980; *Lewis* v. *Superior Court, supra,* 77 Cal.App.3d at pp. 847-852; *In re Marriage of Elkins,* 28 Cal.App.3d 899, 903 [105 Cal.Rptr. 59]; *In re Marriage of Karlin,* 24 Cal.App.3d 25, 34 [101 Cal.Rptr. 240] [disapproved on other grounds in *In re Marriage of Brown, supra,* 15 Cal.3d at p. 851, fn. 14]; *Wilkinson* v. *Wilkinson,* 12 Cal.App.3d 1164, 1168 [91 Cal.Rptr. 372]; *In re Marriage of Brown, supra,* 15 Cal.3d at pp. 850-851; *In re Marriage of Cobb,* 68 Cal.App.3d 855, 860, fn. 1 [137 Cal.Rptr. 670]; cf. *Irwin* v. *Irwin,* 69 Cal.App.3d 317, 321-322 [138 Cal.Rptr. 9].)

Although former husband does not advance any other basis for estoppel, he does assert that there was some sort of agreement between the parties with respect to the retirement pay. ■ Even if there had been such an agreement, unless it was written or agreed to by stipulation of the parties in open court, the court would have been required to divide the community property equally notwithstanding the agreement. (See Civ. Code, § 4800, subd. (a); *In re Marriage of Elkins, supra,* 28 Cal.App.3d at pp. 903-904.) In any event, it is apparent from the trial court's reference in its memorandum of intended decision to former wife's testimony there was no such agreement that the court determined there was no agreement between the parties as to the ultimate disposition of the retirement benefits. It is true that in the course of the default dissolution hearing after a brief discussion as to former husband's intent to find employment, former wife testified: "It is supposed to be like a $20,000 a year job. I don't know. See, my husband and I have talked and decided he would live off his retirement pay, and I would live off of what I collected from the house *until we get settled.*" (Italics added.) That evidence is entirely insufficient to establish any agreement between the parties as to ultimate disposition of the retirement benefits.

The judgment against former husband will be affirmed.

### Former Wife's Cross-appeal

■ Former wife's contention is that having found that defendant Shepard's negligence was the proximate cause of damages to her in the amount of $56,062.64 and "further detriment" valued at $1, the court erred in entering judgment against Shepard for only $1 rather than $56,062.64. The brief filed by defendant Shepard is virtually nonrespon-

sive to this contention. The questions as to whether plaintiff's claim was barred in whole or part by the statute of limitations and whether plaintiff alleged or proved any negligence on the part of defendant Shepard subsequent to his original negligence in failing to list an interest in the retirement benefits as community property in the petition for dissolution are not properly issues in this appeal. There is before us no appeal by Shepard from the judgment against him in the amount of $1, and the only issue raised by former wife on her appeal from the judgment against Shepard is the amount of the judgment. For the same reasons, the question whether the court's finding of proximate causation is supported by substantial evidence is not properly in issue either. However, the issue of causation is involved in the determination of the proper amount of the judgment, for it is Shepard's contention that since all former wife lost was her judgment against former husband and since she now has recovered judgment against former husband, she has incurred no loss as a result of his negligence. Thus, the issue of causation is before us. However, we do not agree with defendant Shepard that the trial court's finding that former wife's loss was caused by his negligence is unsupported by substantial evidence.

In the first place, as to the period from May 3, 1972, to June 1, 1977, the judgment against former husband is based on retirement payments to husband of $280 per month, whereas in fact, because of cost-of-living increases, husband was actually receiving greater amounts than that, and the damages of $56,062.64 found by the court to have been caused by Shepard's negligence included former wife's interest in the retirement payments during that period at the greater amounts actually paid. Secondly, there is a vast difference between a judgment and cash in hand. There is no certainty that former wife will be successful in enforcing the judgment against former husband. To the extent she is unable to do so, particularly as to retirement payments long since received by former husband, her loss may reasonably be attributed directly to defendant Shepard's negligence. It is apparent, therefore, that the trial court erred in concluding that the $56,062.64 in damages found to be proximately caused by Shepard's negligence was completely offset by the judgment against former husband. Accordingly, the $1 judgment against defendant Shepard is erroneous.

The question is, then, what disposition to make. Except to the extent the judgment against former husband is less in amount than that against defendant Shepard, the exact amount of former wife's loss attributable to Shepard's negligence will depend on the amounts paid on the judgment

against former husband. But this uncertainty is itself largely attributable to defendant Shepard's negligence, and he should not benefit from his own negligent conduct. It is appropriate, therefore, to modify the judgment against defendant Shepard to change the amount of the judgment from $1 to $56,063.64 together with costs in the amount of $243.22 as set forth in the judgment rendered by the trial court. However, as former wife concedes, it is also fundamental that she may not receive payment twice for the same loss. Accordingly, the judgment against defendant Shepard will also be modified to provide that any amounts received by former wife on account of the judgment against former husband, whether paid voluntarily or pursuant to court process, shall constitute credits against the unpaid balance of the judgment against defendant Shepard.

### Disposition

The paragraph numbered 1 on page 2 of the judgment is modified by substituting for the figure $1 in the last line thereof the figure $56,063.64 so that the amount of the judgment against defendant Shepard is $56,063.64, together with plaintiff's costs in the amount of $243.22. The judgment is further modified by adding to page 2 thereof a paragraph numbered 3 reading as follows: "Any amounts received by plaintiff on account of the judgment against defendant Harold J. Gorman, whether paid voluntarily or pursuant to court process, shall constitute credits on and reduce the amount of the unpaid balance of the judgment in favor of plaintiff and against defendant Shepard as set forth in paragraph 1 on page 2 hereof." As so modified, the judgment is affirmed. Helen L. Gorman shall recover costs on appeal.

Tamura, Acting P. J., and McDaniel, J., concurred.

The petitions of the defendant and appellant and the defendant and respondent for a hearing by the Supreme Court were denied May 10, 1979.