[No. C019509. Third Dist. Mar. 11, 1996.]

W.W.S.M. INVESTORS, Plaintiff and Appellant, v.
GREVE, CLIFFORD, DIEPENBROCK & PARAS, Defendant and
Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II, IV and V.

**COUNSEL**

Thomas Casazza and John T. Schreiber for Plaintiff and Appellant.

Branson, Fitzgerald & Howard, Thomas A. Branson and Sterling Tao for Defendant and Appellant.

**OPINION**

**MORRISON, J.**—W.W.S.M. Investors (plaintiff) retained Greve, Clifford, Diepenbrock & Paras (defendant) to assist in stopping the Internal Revenue Service (I.R.S.) from wrongfully levying funds and to recover such funds. Defendant was successful in convincing the I.R.S. that its levies were wrong, but failed to provide plaintiff with adequate advice as to how to obtain recovery of the wrongfully levied amounts. Plaintiff filed a claim form in the wrong I.R.S. office, rendering the claim invalid. Only a valid claim would toll the nine-month statute of limitations. After plaintiff's suit against the I.R.S. for the recovery of wrongfully levied funds was dismissed as untimely, plaintiff brought a legal malpractice action against defendant.

Both parties appeal from the judgment in favor of plaintiff in the legal malpractice action. Plaintiff contends the damages awarded were inadequate and the lien granted by the trial court upon any judgment in its case against the I.R.S. is unworkable. Defendant contends much of the trial court's decision is now moot due to the Ninth Circuit's recent decision reversing the dismissal of plaintiff's case against the I.R.S. Further, defendant contends no evidence supports the date chosen by the trial court to begin calculation of prejudgment interest. We modify the judgment to award plaintiff an additional $1,000 in damages and remand for reconsideration and clarification of the lien. Otherwise, we affirm the judgment.

### Factual and Procedural Background

In 1984, plaintiff peacefully took the assets of Advanced Plastic Engineering Corporation pursuant to its security interest in those assets. Plaintiff's security interest had priority over the I.R.S. tax lien on the same assets. The following year, in July 1985, the I.R.S., seeking to enforce its tax lien, served levy on plaintiff's bank account for taxes owed by Advanced Plastic Engineering Corporation. Shortly thereafter, the I.R.S. seized plaintiff's money. At that point plaintiff quit paying its payroll taxes.

On or about August 6, 1985, plaintiff retained Gordon Cook of defendant law firm to straighten out the tax matter. The following March, Cook was successful in convincing the I.R.S. to accept plaintiff's position with respect to the levies. Cook told plaintiff it had won the legal dispute. Robert Stephenson, a partner in plaintiff partnership, asked Cook what should be done to get the levied money returned. Cook did not know what should be done, but thought they should file a precautionary claim form. Stephenson asked if I.R.S. form 843 was appropriate; Cook said yes.

On March 17, 1986, Stephenson filed form 843; since the form said to file where you file your return, Stephenson filed it in Ogden, Utah. The form should have been filed in Sacramento; because it was not, the I.R.S. did not refund the money levied from plaintiff's account. In September, Cook wrote a letter to the accountant handling the estate of one of Stephenson's partners. In the letter Cook stated: "It occurred to me after our discussion of last week, since this is a wrongful levy claim and not a refund claim, W.W.S.M. had only nine months to make the claim." The nine-month period for the first levy expired on April 8, 1986.

On February 9, 1987, Cook filed a complaint against the I.R.S. on behalf of plaintiff. The I.R.S. filed a counterclaim for plaintiff's unpaid payroll taxes since the levies began.

In 1989, Cook became very ill and could no longer handle the suit; he had to withdraw as attorney of record.[1] Defendant did not have another attorney who could handle the matter, so plaintiff substituted Wagner, Kirkman & Blaine as attorneys in January 1990.

On November 6, 1991, the federal district court dismissed plaintiff's suit against the I.R.S. The court found the suit had to be filed within nine months of the levy, except if a proper claim for refund was made within the nine months, the filing period would be extended an additional year. The refund claim was sent to Ogden rather than Sacramento, so the claim was invalid. Because the statute of limitations had not been extended by filing a proper claim, the federal suit was untimely. Plaintiff appealed from this dismissal.

In August 1993, plaintiff settled the counterclaim, paying the I.R.S. $108,288.34, including $48,827.85 for unpaid payroll taxes and $59,460.49 in interest.

Plaintiff brought suit against defendant for professional negligence, breach of contract, and breach of fiduciary duty. A jury was waived and the case tried before the court.

Plaintiff's evidence concerning damages was provided by Stephenson and John Skelton, a certified public accountant retained to offer an opinion on plaintiff's out-of-pocket damages. Skelton reviewed items of correspondence, billings, and various schedules prepared by Stephenson. Skelton testified plaintiff paid $38,534 to defendant in legal fees for the tax dispute. This amount included fees billed as "General Matters." Stephenson testified he reviewed the billings and his recollection was a substantial portion, if not all, of the general matters billings related to the suit against the I.R.S. On cross-examination, defendant elicited testimony that certain general matters billings were not related to the tax dispute.

Plaintiff paid the Wagner firm $48,038 in legal fees. Skelton reviewed several of the invoices, but not all; he did not perform a complete audit. Stephenson testified all amounts paid to Wagner related to the tax dispute because Wagner handled only the claim, the counterclaim, and the appeal.

Skelton testified plaintiff paid its current attorney, Thomas Casazza, $3,200 for work on the counterclaim and $23,000 for work on the appeal. Again, he did not review all the invoices; he did not review any of the last $13,000 in billings. Stephenson testified his recollection was that he paid

---

[1] Cook passed away before trial.

Casazza $3,237 for work on the counterclaim, but admitted that figure might not be accurate.

In closing argument, defendant argued the issue of damages was an example of the failure of proof in plaintiff's case. Defendant argued plaintiff was requesting the court to go through all the bills and segregate those that were properly part of the damages. Defendant argued the true damages were entirely speculative and plaintiff had made no attempt to assist the court.

In its tentative decision, the trial court found defendant committed malpractice by not advising plaintiff to file the refund claim in Sacramento. The court found it was not speculative that the levied amounts of $79,004.90 would have been returned absent defendant's malpractice. The court found, however, that the decision to withhold payroll taxes was plaintiff's, not Cook's, so it awarded no damages related to the counterclaim by the I.R.S. The court found plaintiff was entitled to legal fees it incurred in prosecuting its action against the I.R.S., but the computation of damages was difficult because plaintiff refused to segregate the amounts. The court awarded damages for fees paid to defendant from March 1986, but none for general matters billings and none for fees paid to Wagner because plaintiff failed to carry its burden of proof. The court found it difficult to determine the nature of the Casazza billings. It was not persuaded plaintiff should recover legal fees for the appeal, and even if it should, such fees were not established by credible evidence. Further, the amount requested appeared excessive. Finally, the court gave defendant a lien on any recovery from the I.R.S. by plaintiff to prevent a double recovery.

Plaintiff objected to the tentative decision and provided a breakdown of the fees paid to Wagner. The trial court awarded plaintiff the Wagner fees in the judgment, but deleted them from the amended judgment after defendant complained the breakdown had not been presented at trial. The judgment awarded plaintiff $79,004.90 for the seized property and $18,602.91 in legal fees, both with interest, and gave defendant a lien for amounts paid under the judgment against any recovery in the federal case.

After both parties appealed from the judgment, they stipulated that defendant would pay the judgment without prejudice to its appeal rights.

After the opening brief was filed in this case, the Ninth Circuit rendered its decision in plaintiff's appeal from the dismissal of its case against the

I.R.S.[2] The court affirmed the district court's dismissal of plaintiff's claim under 26 United States Code section 7426, but reversed its refusal to grant leave to amend to permit plaintiff to allege a claim for refund under 28 United States Code section 1346. (*WWSM Investors* v. *U.S.* (9th Cir. 1995) 64 F.3d 456.)

## Discussion

### I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. *The Lien*

■ The amended judgment provides: "Defendant is given a lien for any amounts paid under this judgment for $79,004.90 plus interest against any recovery obtained by plaintiff in *W.W.S.M. Investors* v. *United* States, No. CV-S-87-0153 WBS, less plaintiff's cost in said suit. No lien is granted for any payment of this judgment for legal fees and interest thereon."

Plaintiff raises two objections to the lien imposed by the trial court upon any recovery by plaintiff from the I.R.S. First, plaintiff contends there is no precedent for the lien. It relies on *Munoz* v. *Davis* (1983) 141 Cal.App.3d 420 [190 Cal.Rptr. 400], in which the court held an attorney who commits malpractice has no right of equitable indemnity against the tortfeasor whose actions caused the client's injuries. In *Munoz*, the plaintiff retained an attorney to represent him in a claim for personal injuries sustained in a car accident. The plaintiff sued the attorney, alleging his negligence in failing to file the suit resulted in the action against the negligent driver being barred by the statute of limitations. The attorney answered and filed a cross-complaint against the negligent driver for equitable indemnity. The trial court sustained the demurrer to this cross-complaint. The appellate court affirmed, finding the attorney and the negligent driver were not jointly and severally liable to the plaintiff for the same injury because the connection between the negligent driver's act and the attorney's malpractice was too tenuous. (*Id.* at pp. 426-427.) The court further found no equitable basis for shifting the malpractice liability to the original tortfeasor. (*Id.* at pp. 427-429.)

---

[2]We take judicial notice of this decision pursuant to Evidence Code section 452, subdivision (c). Plaintiff requests we also take judicial notice of the briefs and petition for rehearing filed in the federal case. Because the final Ninth Circuit decision, issued after the initial opinion was withdrawn, is now available, we decline to take judicial notice of these interim materials.

*See footnote, *ante*, page 517.

Here, the trial court did not create a new cause of action that allowed defendant to proceed against the I.R.S. Instead, it merely recognized the potential for plaintiff to receive a double recovery. The granting of a lien to prevent double recovery is similar to the credit awarded in *Gorman v. Gorman* (1979) 90 Cal.App.3d 454 [153 Cal.Rptr. 479]. In *Gorman*, an attorney was found negligent in failing to list the husband's retirement benefits as community property. The client, the former wife, had obtained a judgment against her former husband for a portion of these benefits. The trial court concluded the damages caused by the attorney's malpractice were offset by the judgment against the former husband and awarded only $1 in damages. The reviewing court found this was error. It noted the difference between a judgment and cash in hand and the lack of certainty that the former wife could collect on the judgment. (*Id.* at p. 466.) The amount of damages were uncertain, however, because of the possibility of collection on the judgment. The court found this uncertainty largely due to the attorney's negligence and that he should not benefit from his own negligence. (*Id.* at pp. 466-467.) To prevent the former wife from receiving a double recovery, which she conceded was unfair, the judgment provided any amounts she collected from the former husband shall constitute credits against the unpaid balance of the judgment against the attorney. (*Id.* at p. 467.)

This case is very similar to *Gorman,* except the potential for double recovery here is even less certain. By not reversing the judgment for the levied amounts, as defendant urged, we recognize defendant should not benefit from an uncertainty caused by its negligence. We also recognize, as did the court in *Gorman v. Gorman, supra,* 90 Cal.App.3d 454 that plaintiff should not recover twice. The lien was intended to resolve that problem.

Plaintiff next contends the lien is inequitable unless it is net of attorney fees and expenses. Plaintiff reasons it will risk the cost of proceeding against the I.R.S. and it may recover less than the levied funds plus interest and its attorney fees and expenses. If defendant recovers the full amount of the levied funds and interest under the lien, plaintiff will have spent money for which only defendant benefits. We agree such result would be inequitable.

Plaintiff objected after the tentative decision that the lien was patently unjust without an offset for legal fees. The trial court then added wording in its judgment to indicate the lien was "less plaintiff's cost in said suit." Plaintiff seeks clarification that "cost" includes attorney fees. We remand for the trial court to make this clarification. Indeed, since plaintiff has now recovered the levied sums plus interest from defendant, the question arises whether it will pursue the suit against the I.R.S. at all. Both parties suggest

a solution might be to assign the I.R.S. suit to defendant. In light of the Ninth Circuit decision, the federal suit is now viable. On remand, the trial court and the parties may consider whether an assignment is a better method for protecting against a double recovery than the lien.

IV., V.*

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

DISPOSITION

We modify the judgment to award plaintiff an additional $1,000 in damages; we remand the matter for the trial court to clarify "less plaintiff's cost" with respect to the lien and to reconsider whether a lien or an assignment of the federal action to defendant is the best method to protect against a double recovery by plaintiff. In all other respects, the judgment is affirmed. Each party shall bear its own costs on appeal.

Sims, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied April 10, 1996, and appellant's petition for review by the Supreme Court was denied July 10, 1996.

*See footnote, *ante*, page 517.