[No. B100507. Second Dist., Div. Seven. July 16, 1996.]

DeCASTRO WEST CHODOROW & BURNS, INC., et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; INITIAL AMALGAMATION, LTD., et al., Real Parties in Interest.

**COUNSEL**

Musick, Peeler & Garrett, William McD. Miller III, Mary Catherine M. Bohen, Stern & Goldberg and Alan N. Goldberg for Petitioners.

No appearance for Respondent.

O'Melveny & Myers, Robert S. Draper and Gregory R. Oxford for Real Parties in Interest.

**OPINION**

**LILLIE, P. J.**—Petitioners, who are defendants in an action for legal malpractice, seek a writ of mandate to compel the superior court to vacate its March 11, 1996, order denying summary adjudication on the issue of plaintiffs' entitlement to "lost opportunity" damages, and to compel the superior court to grant their motion for summary adjudication of that issue. The primary issue presented on this proceeding is whether Code of Civil Procedure section 437c, subdivision (f)(1), permits summary adjudication with respect to only one of two or more components of compensatory damages claimed by plaintiff, so that the granting of the motion will not completely dispose of a cause of action. We conclude that section 437c, subdivision (f)(1), does not permit summary adjudication under such circumstances, and the trial court properly denied defendants' motion for summary adjudication on that ground.

## PROCEDURAL BACKGROUND

In June 1993, plaintiffs filed a complaint for legal malpractice against DeCastro West Chodorow & Burns, Inc. (DeCastro) and Bruce S. Glickfeld (Glickfeld), alleged to be a member and shareholder of the DeCastro firm; in June 1994, plaintiffs filed a first amended complaint adding Robert S. West (West) as a defendant; West was alleged to have been a member and shareholder of the DeCastro firm until 1986. In March 1995, plaintiffs filed a second amended complaint for legal malpractice containing three causes of action captioned negligence, breach of contract (implied-in-fact contract), and breach of fiduciary duty.

The second amended complaint (complaint) alleges that in 1963, plaintiff M. Larry Lawrence (Lawrence) and his business associate Leonard Friedman (Friedman), not a party herein, as well as other investors, purchased the physically deteriorated Hotel Del Coronado (Hotel) for $100,000; from 1965 to 1985, Lawrence and Friedman were the owners of Hotel through a combination of various entities, including plaintiffs Initial Amalgamation, Ltd., Del Properties Incorporated and Hotel Del Coronado Corporation; from 1965 through 1985, Lawrence and Friedman rejuvenated and rebuilt the Hotel into one of the premiere resort hotels in the United States; the Hotel had appreciated more than a thousandfold; since 1963, the DeCastro law firm and its predecessor law firm represented the Hotel, Lawrence, Friedman, and the entities having an ownership interest in Hotel (Hotel Entities) in connection with tax planning, business transactions, and structuring the partnerships and corporations which constitute the Hotel Entities.

The complaint further alleges that in 1984 Friedman informed defendants that he wanted to liquidate his interest in Hotel; after negotiations, Lawrence and Friedman agreed that Lawrence would acquire Friedman's interest in Hotel and the Hotel Entities for $65 million; the transaction designed by defendants to accomplish this objective was consummated in February 1985 (the 1985 Transaction), and involved the execution of over 70 documents; defendants jointly represented Lawrence, Friedman and the Hotel Entities in the negotiation and consummation of the 1985 Transaction; in connection with the 1985 Transaction, defendants recommended to Friedman that he could avoid or defer payment of income taxes on certain aspects of the transaction pursuant to a "Tax Plan" which defendants would prepare; defendants recommended the Tax Plan to Lawrence, who was willing to accommodate Friedman's tax planning as long as the plan was not unlawful and did not conflict with Lawrence's objective of acquiring economic ownership of the Hotel, consistent with outright purchase of the Hotel.

Defendants assured Lawrence that the Tax Plan satisfied Lawrence's requirements, and defendants obtained Lawrence's consent to such plan.

The Tax Plan allegedly required that Lawrence pay Friedman $65 million; that Friedman be retained as a 60 percent partner in HDC Properties, the predecessor to the M. L. Lawrence Revocable Trust, a 60 percent partner in Initial Amalgamation, Ltd., and a 60 percent shareholder in Del Properties Incorporated (formerly known as Hotel Del Coronado Corporation); defendants told Lawrence that although Friedman was a shareholder and partner in the Hotel Entities, Lawrence would have complete decisionmaking authority to manage Hotel and would be entitled to receive all income and profits from Hotel.

After 1985, Lawrence allegedly followed the advice of defendants in connection with the Tax Plan, and he distributed to himself $37 million from Initial Amalgamation, Ltd., and transferred Hotel assets among various Hotel entities without regard to Friedman's formal ownership interests in such entities. In 1987, Lawrence negotiated a $205 million nonrecourse loan with Primerica Corporation (Primerica) secured by the assets of Hotel and Hotel Entities; defendants assured Lawrence that he had no obligation to obtain consent from Friedman or disclose the loan to Friedman, and that Lawrence could allocate the loan proceeds in any manner he wished. Lawrence received $130 million of the loan proceeds. Plaintiffs also allege that defendants acted for the benefit of Friedman, which caused damage to Lawrence, in connection with defendants' advice in 1988 to adopt certain changes in the partnership agreements, the books and accounts of Initial Amalgamation, Ltd. and HDC Properties, and to make such changes retroactive to 1986. According to plaintiffs, defendants were negligent in failing to disclose to them that the changes in the partnership capital accounts could be interpreted as triggering the partnership agreement provisions requiring distribution to Friedman.

In April 1989, Friedman filed a demand for arbitration against Lawrence, alleging entitlement to 60 percent of the $205 million Primerica loan, 60 percent of all distributions made to Lawrence by various Hotel Entities, and an accounting. In June 1989, Friedman also recorded memoranda of rescission of the documents executed in connection with the 1985 Transaction. Plaintiffs were forced to defend the arbitration and incurred costs and attorney fees; the matter was settled pursuant to an agreement whereby HDC Properties and Initial Amalgamation, Ltd., paid Friedman $10 million in return for rescission of the memoranda of rescission and an agreement by Friedman that Lawrence is the full and complete owner of Hotel and Hotel Entities.

Plaintiffs alleged that the negligent advice and actions of defendants caused them to pay an additional $10 million to Friedman to achieve the objective for which they had bargained in 1985; further, plaintiffs were forced to defend the arbitration, allegedly incurring in connection therewith in excess of $10 million in attorney fees and costs. Plaintiffs also alleged that the memoranda of rescission "cast a cloud on the title of the Hotel and forced Lawrence to abort the sale or refinancing of the Hotel which would have generated a profit of more than $100 million."

After answering the complaint, defendants moved for summary adjudication of the issue that "Plaintiffs' claim for damages against defendants for an alleged lost opportunity to sell or refinance the Hotel based upon the recordation of the Memoranda of Rescission on the Hotel real property by Leonard Friedman in June and July 1989 . . . cannot be established."[1] Defendants' motion asserted, inter alia, that the allegation in the complaint that plaintiffs were forced to abort the sale or refinancing of the Hotel was not true because Lawrence admitted in testimony before the IRS in 1991 that he never had any intention of selling Hotel and plaintiffs admitted in discovery that they did not receive any offers from third parties in 1989 or 1990 seeking to purchase or refinance Hotel. Defendants also argued that plaintiffs were required to establish their lost profits or lost opportunity with reasonable certainty, and they could not do so; instead plaintiffs attempted to establish their claim with "mere hope and speculation." In opposition, plaintiffs asserted that defendants' negligence permitted Friedman to record the memoranda of rescission, which created a cloud on title that prevented plaintiffs from marketing or selling Hotel. Plaintiffs submitted the declaration of Timothy Binder, corporate counsel for Hotel Del Coronado Corporation, and vice-chairman of its board; Binder set out details of a 1989 agreement between Lawrence and Primerica, in which Primerica agreed to waive any objection to prepayment of the loan and relinquishment of its options and rights of first refusal under the prior loan documents and Lawrence agreed to accept any commercially reasonable sale or refinancing offer that would net $400 million or more; after a listing agreement for Hotel was executed with Smith Barney, Inc., plaintiffs learned about the recording of the memoranda of rescission and around October 1989, Lawrence terminated the sale or refinancing arrangements with Primerica and Smith Barney,

---

[1]Defendants also moved for summary adjudication of the issue that "It cannot be established by plaintiffs that the acts of defendants were the 'cause in fact' of any damages arising as a result of the recordation of the Memoranda." Although this issue does not expressly refer to the element of lost opportunity damages, this issue is essentially an alternative attack on the issue of lost opportunity damages, focusing instead on the issue of causation. Inasmuch as the trial court's March 11, 1996, order denying the motion for summary adjudication of issues does not refer to the issue of causation, and defendants' petition does not seek any relief as to this issue, we need not discuss it further.

Inc., because the memoranda created a cloud on title that he believed would prevent plaintiffs from performing under the agreement with Primerica and expose them to substantial liability.

In reply to the opposition, defendants raised evidentiary objections to the Binder declaration, in addition to other evidence offered by plaintiffs, and also maintained that the opposition did not create a dispute of fact on the issue of whether the recording of the memoranda of rescission caused any damages that were reasonably certain. Defendants also contended that the law of damages for slander of title, cited by plaintiffs, did not apply to the instant case which involved damages for legal malpractice.

An initial tentative decision of the court dated January 30, 1996, and prepared for the hearing on the motion on that date stated that "The Motion for Summary Adjudication of issues on plaintiffs' claim for lost opportunity damages is denied. First, the loan proceeds contributed to plaintiffs' profits. There is a question of fact as to whether defendants' alleged malpractice led to plaintiffs' inability to secure further loans and, consequently, lose profits. Regarding the issue of causation, there is a question of fact as to whether defendants' alleged malpractice placed Friedman in a position where he had no choice but to record the Memoranda of Rescission."

Due to illness of the judge, the hearing on the motion was continued; hearing on the motion was held on February 9, 1996. After argument, the court took the matter under submission and then issued a minute order stating that "Moving parties have cited [*Westside Center Associates* v. *Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507 (49 Cal.Rptr.2d 793)] which states fairly strongly that in order for a lost benefits cause of action to proceed the plaintiff must show 'an existing relationship with an identifiable buyer.' Here, that standard has not been met and thus the damages from the lost opportunity claim would appear to be barred. However, in context, this contention is but one element of damages that are sought by plaintiffs. Regardless of the merits of the contention, the court does not have the power to adjudicate damage issues save for issues of punitive damages. See *Hood* v. *Superior Court* (1995) 33 Cal.App.4th 319 [39 Cal.Rptr.2d 296]. In this case there are allegations concerning a ten million dollar claim as well as lost opportunity claims. Thus, even though the damage claim being attacked is in excess of one hundred million dollars . . . , it cannot be the subject of summary adjudication because resolution of the issue will not totally dispose of the cause of action. See Section 437c of the Code of Civil Procedure. The motion is denied."

On February 16, 1996, defendants filed a motion for reconsideration, seeking to have the court grant their motion on its merits; defendants

contended that the 1993 amendments to Code of Civil Procedure section 437c, subdivision (f)(1), permitted the court to adjudicate a "claim for damages," including an item of compensatory damages. After hearing on March 4, 1996, the court denied the motion for reconsideration.

On March 11, 1996, the court signed and filed a formal order denying the motion for summary adjudication of issues. That order stated that "the Court finds that there are no triable issues of material fact as to any of the issues presented by this Motion and that as a matter of law plaintiffs' claimed damages from the lost opportunities claim are barred. However, the Court concludes that it cannot grant summary adjudication since the Court does not have the power to adjudicate damage issues save for issues of punitive damages (see *Hood* v. *Superior Court* (1995) 33 Cal.App.4th 319 [39 Cal.Rptr.2d 296]) and because resolution of this issue will not completely dispose of a cause of action. (See Code of Civil Procedure § 437c.)"[2]

On March 14, 1996, defendants filed the instant petition for writ of mandate wherein they challenge the trial court's interpretation of Code of Civil Procedure section 437c, subdivision (f)(1), and seek a writ directing the superior court to vacate its order denying the motion for summary

---

[2]On February 26, 1996, plaintiffs filed a motion for reconsideration, in which they challenged the trial court's reliance on the *Westside Center Associates* v. *Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507 [49 Cal.Rptr.2d 793] case in the February 9, 1996, minute order. After hearing on March 18, 1996, the court denied the motion for reconsideration on grounds going to the merits of plaintiffs' substantive arguments. In light of the trial court's ruling that it had no statutory authority to adjudicate the issues presented by defendants' motion, a ruling which we determine herein to be correct, the court's analyses of the merits of the motion for summary adjudication in the February 9, March 11, and March 18, 1996, orders are not binding upon the parties or upon the court. "An order denying a motion or dismissing a proceeding for procedural reasons such as lack of jurisdiction is not res judicata as to the merits of any underlying substantive question." (*Gorman* v. *Gorman* (1979) 90 Cal.App.3d 454, 462 [153 Cal.Rptr. 479].)

We note that even though plaintiffs purport to file a "joinder" in "defendants' petition for alternative writ of mandate," plaintiffs have not filed any petition on their own behalf. Accordingly, the March 18, 1996, order is not properly before us for review. Although plaintiffs apparently agree with the trial court's statutory analysis of Code of Civil Procedure section 437c, subdivision (f)(1), plaintiffs nevertheless seek to have us vacate the trial court's orders and enter a new and different order denying the motion for summary adjudication of issues on the merits on the ground that triable issues of fact exist on the issues of causation and damages. No authority is presented for such a disposition on the merits. If the trial court cannot address the merits of defendants' motion for summary adjudication of issues, we fail to see how we can do so on this proceeding. Where a statute requires a court to exercise its jurisdiction in a particular manner, follow a particular procedure, or subject to certain limitations, an act beyond those limits is in excess of jurisdiction and void. (*Jordan-Lyon Productions, Ltd.* v. *Cineplex Odeon Corp.* (1994) 29 Cal.App.4th 1459, 1466 [35 Cal.Rptr.2d 200].) Accordingly, we do not intend anything herein to constitute an opinion on the merits of the issues raised in the underlying motion for summary adjudication.

adjudication of issues and to enter a new order granting the motion. On March 21, 1996, we issued an order to show cause. Plaintiffs filed an answer and a return to the writ; defendants filed a response to the return. Oral argument has been had on the order to show cause.

## I

### PRINCIPLES OF STATUTORY CONSTRUCTION

The objective of statutory interpretation is to ascertain and effectuate legislative intent. (*Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218, 1226 [23 Cal.Rptr.2d 397, 859 P.2d 96].) We look first to the words of the statute, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Significance should be attributed to every word and phrase of a statute, and a construction making some words surplusage should be avoided. (*Seidler* v. *Municipal Court* (1993) 12 Cal.App.4th 1229, 1234 [16 Cal.Rptr.2d 90].) Both the legislative history of a statute and the wider historical circumstances of its enactment may be considered in ascertaining legislative intent. (*Dyna-Med, Inc.* v. *Fair Employment and Housing Com.*, *supra*, 43 Cal.3d at p. 1387.) Various extrinsic aids, including the history of the statute, committee reports and staff bill reports may be used to determine the intent of the Legislature, and such aids are especially helpful where the wording of the statute is unclear. (*Kaiser Foundation Health Plan, Inc.* v. *Lifeguard, Inc.* (1993) 18 Cal.App.4th 1753, 1762 [23 Cal.Rptr.2d 235].)

Although a substantial change in the language of a statute by an amendment indicates an intention to change its meaning, a mere change in phraseology, incident to a revision of the statute, does not result in a change of meaning unless the intent to make such a change clearly appears. (*Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 493 [159 Cal.Rptr. 494, 601 P.2d 1030].) Thus, surrounding circumstances may indicate that an amendment was merely the result of a legislative attempt to clarify the true meaning of the statute. (*Williams* v. *Garcetti* (1993) 5 Cal.4th 561, 568 [20 Cal.Rptr.2d 341, 853 P.2d 507].)

## II

### CODE OF CIVIL PROCEDURE SECTION 437c, SUBDIVISION (f)(1)

In 1990, Code of Civil Procedure section 437c was amended in numerous respects. At that time, subdivision (f) of section 437c was amended to

provide in pertinent part as follows: "If it is contended that one or more causes of action within an action has no merit or that there is no defense thereto, or that there is no merit to an affirmative defense as to any cause of action, or both, or that there is no merit to a claim for damages, as specified in Section 3294 of the Civil Code, or that one or more defendants either owed or did not owe a duty to the plaintiff or plaintiffs, any party may move for summary adjudication as to that cause or causes of action, that affirmative defense, that claim for damages, or that issue of duty."

In the 1990 version of the statute, the language "claim for damages" is unambiguous in referring only to those damages specified in Civil Code section 3294, or punitive damages. In the long dependent clause beginning with "If," the statute specifies that the damages referred to are those set out in Civil Code section 3294. Thus, the second reference to "*that* claim for damages," in the independent part of the sentence beginning with "any party may move," clearly relates back to punitive damages. The structure of the independent clause portion of the sentence, with essentially four conjunctive circumstances strung together with the word "that," thus mirrors the circumstances set out in the prior portion of the sentence, and refers back to the circumstances set out in the dependent clause beginning with the word "If." Accordingly, the grammatical structure of the sentence leaves no doubt that the reference to "claim for damages" in the 1990 version of the statute is intended to refer only to punitive damages. This interpretation is supported by the May 1990 report of the Senate Committee on the Judiciary. "That report notes that the California Judges Association was the source of the bill and comments as follows: 'According to the sponsor, it is a waste of court time to attempt to resolve issues if the resolution of those issues will not result in summary adjudication of a cause of action or affirmative defense. Since the cause of action must still be tried, much of the same evidence will be considered by the court at the time of trial. This bill would instead require summary adjudication of issues only where an entire cause of action, affirmative defense or claim for punitive damages can be resolved. . . .' The August 1990, report of the Assembly Committee on Judiciary adopted the Senate's analysis." (*Lilienthal & Fowler* v. *Superior Court* (1993) 12 Cal.App.4th 1848, 1853-1854 [16 Cal.Rptr.2d 458].) Moreover, we are unaware of anything in the legislative history of the 1990 amendment which indicates an intent to permit summary adjudication of only one component of the damages element of a cause of action, which does not dispose of the entire cause of action.[3]

In 1992, the Legislature again amended portions of Code of Civil Procedure section 437c, but did not amend the foregoing provision. In 1993, the

---

[3]Of course, if a defendant can establish the lack of any of the elements of a cause of action, including the element of causation or damage, then a motion for summary adjudication may

Legislature amended subdivision (f) of section 437c, so that the pertinent provision now reads as follows: "(f)(1) A party may move for summary adjudication as to one or more causes of action within an action, one or more affirmative defenses, one or more claims for damages, or one or more issues of duty, if that party contends that the cause of action has no merit or that there is no affirmative defense thereto, or that there is no merit to an affirmative defense as to any cause of action, or both, or that there is no merit to a claim for damages, as specified in Section 3294 of the Civil Code, or that one or more defendants either owed or did not owe a duty to the plaintiff or plaintiffs. A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty."

In addition to adding the second sentence in Code of Civil Procedure section 437c, subdivision (f)(1), the 1993 amendments altered the sentence structure of the first sentence without materially changing the words in the sentence. Now, the independent clause appears first, with the qualifying clause beginning with "if" appearing second. Thus, the first reference to punitive damages occurs *after* a prior unqualified reference to "one or more claims for damages." ■ Petitioners maintain essentially that the 1993 amendments "were intended to enable courts to dispose of claim[s] for compensatory damages, apart from punitive damage claims." However, petitioners do not cite to any part of the legislative history of the 1993 amendments which supports the contention that the scope of the statute was intended to be expanded to include summary adjudication of a single item of compensatory damage which is not dispositive of an entire cause of action.

A June 29, 1993, analysis of Assembly Bill No. 498 prepared for the Senate Committee on Judiciary states that the bill would "clarify existing language relating to summary adjudication motions and codify existing case law and legislative intent that sets the standard for granting summary adjudication." The analysis at one point asserts that "Existing law, when read, can be confusing." An analysis of Assembly Bill No. 498 as amended July 1, 1993, prepared by the Legislative Analyst for the Senate Rules Committee, states that the bill would "clarify existing language relating to

be appropriate under other language in subdivision (f)(1) of section 437c of the Code of Civil Procedure. (See Code Civ. Proc., § 437c, subd. (n)(1).) In this situation, if the element of damage (i.e., any and all damage) is lacking, the entire cause of action would be without merit and subject to summary adjudication. In the instant case, on the other hand, defendants at all times acknowledged that their motion did not establish the lack of all damage, but addressed only one particular item among several items of compensatory damages sought by plaintiffs. Thus, the granting of the motion would still leave intact the cause of action, containing the claims for the remaining items of compensatory damages.

summary judgment and adjudication and to bring it closer to the federal law relating to these same procedures." Nothing in the foregoing documents purports to alter the scope of issues permitted to be summarily adjudicated under subdivision (f) of section 437c of the Code of Civil Procedure. Thus, despite the more awkward sentence structure of the 1993 amendment, we can only conclude that the first sentence of section 437c, subdivision (f)(1) was amended only to provide clarity and not to alter the meaning of the prior version of the sentence. Accordingly, the current version of the statute, like the former version, contains parallel independent and dependent clauses which must be read together. Thus, when the independent clause is read in conjunction with its corresponding qualifying clause, the statute provides that a party may move for summary adjudication as to "one or more claims for damages" if that party contends that "there is no merit to a claim for damages, as specified in Section 3294 of the Civil Code." The reference to "one or more claims for damages" in the first part of the sentence is thus still qualified by, and limited to, punitive damages. We submit that there is no other reasonable interpretation of the sentence which gives effect to all of its words. Petitioners' reading of the statute renders the reference to punitive damages, as well as the reference to "one or more causes of action" mere surplusage, a result to be avoided.

We also conclude that in order to give effect to the first sentence of Code of Civil Procedure section 437c, subdivision (f)(1), the second sentence must also be read in conjunction with the first sentence, so that the reference to "a claim for damages" must be qualified as referring to the previously defined claim for punitive damages.

Petitioners assert that their interpretation of the statutory language is supported by case law, but the two cases they cite do not support their arguments. In *Lilienthal & Fowler* v. *Superior Court, supra,* 12 Cal.App.4th 1848, the court held that where a plaintiff had alleged within one "cause of action" two separate and distinct obligations relating to two separate and distinct claims, the trial court could not refuse to rule on the merits of a motion for summary adjudication filed by defendants which related only to one of the obligations. In that case, plaintiff sued defendants for legal malpractice in connection with two separate and distinct legal matters, which had nothing to do with each other, and the court concluded that the two matters involved separate and distinct causes of action regardless of how pled in the complaint. (*Id.* at p. 1854.) The court also pointed out that a leading treatise noted that the phrase "cause of action" is unclear, in a broad sense referring to the invasion of a primary right, but in more common usage, a group of related paragraphs in a complaint is often labeled as a

"cause of action," to reflect a separate theory of liability. The treatise concludes that: " '. . . As used in CCP § 437c(f), "cause of action" should be interpreted in the latter sense (theory of liability).' (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1992) § 10:39, p. 10-12.1 . . . .)" (*Lilienthal & Fowler* v. *Superior Court, supra,* 12 Cal.App.4th at p. 1853.) *Lilienthal* offers no support to petitioners' arguments because what was at issue in their motion was a single item of compensatory damage which did not dispose of the entire cause of action, no matter how defined.

Nor does *Hood* v. *Superior Court, supra,* 33 Cal.App.4th 319, support petitioners' interpretation of the statute. *Hood* involved a complaint alleging breach of a noncompetition clause of a contract, and a cross-complaint alleging breach of contract and fraudulent inducement to enter the contract; after the court denied the plaintiff's motion for summary adjudication with respect to defendants' cross-complaint, plaintiff amended its complaint to add a cause of action for declaratory relief, seeking a determination of its rights under the termination clause of the contract, issues which were already fully engaged by other causes of action. The trial court granted plaintiff's motion for summary adjudication. The Court of Appeal issued a writ of mandate directing the trial court to set aside its order, stating that "The adjudication of the declaratory relief cause of action did not purport, by itself, to adjudicate the entirety of any cause of action. Because it did not (and did not adjudicate any of the specific matters still within the scope of summary adjudication), it was prohibited by section 437c, subdivision (f)(1). The trial court should have denied the motion, and its failure to do so was an abuse of discretion." (33 Cal.App.4th at p. 324; see also *Belio* v. *Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1102-1103 [39 Cal.Rptr.2d 737]; but see *Southern Cal. Edison Co.* v. *Superior Court* (1995) 37 Cal.App.4th 839, 846 [44 Cal.Rptr.2d 227].)

We conclude that Code of Civil Procedure section 437c, subdivision (f)(1), does not permit summary adjudication of a single item of compensatory damage which does not dispose of an entire cause of action. The trial court properly denied the motion for summary adjudication on this basis. (See fn. 2, *ante.*)

We are not unsympathetic to petitioners' concerns. They assert that "Absent such a determination by way of summary adjudication, Petitioners are faced with the expense and inconvenience of preparing this matter for trial, [and] will be required to respond to and participate in discovery relating to plaintiffs' lost opportunities claim (including expensive and

time-consuming expert discovery) . . . ." However, it appears that whether or not the issue of lost opportunities damages is asserted at trial, substantially the same operative facts are involved with respect to all of the items of damage sought. Moreover, the trial court is not without an array of procedural devices to deal with discovery issues or issues that may arise at trial in connection with the claim for lost opportunities damages. (See, e.g., *Macy's California, Inc.* v. *Superior Court* (1995) 41 Cal.App.4th 744, 748, fn. 2 [48 Cal.Rptr.2d 496].) In other words, petitioners' concerns with respect to the statutory limits on motions for summary adjudication are best addressed to the Legislature. Further, as stated by one court, "[i]f our interpretation is not what the Legislature intended, the statute requires clarification." (*Belio* v. *Panorama Optics, Inc.*, *supra*, 33 Cal.App.4th at p. 1106, fn. 7.)

DISPOSITION

The petition is denied. The parties are to bear their own costs on this proceeding.[4]

Woods, J., concurred.

Petitioners' application for review by the Supreme Court was denied October 30, 1996. Mosk, J., did not participate therein.

---

[4]On June 13, 1996, petition for writ of mandate was argued before and submitted to the seated panel of Division Seven consisting of Presiding Justice Mildred L. Lillie, Associate Justice Earl Johnson, Jr., and Associate Justice Fred Woods. After submission and the court adjourned, Associate Justice Earl Johnson, Jr., after careful consideration, recused himself from participation in the decision. Thereafter, and on June 24, 1996, counsel were advised in writing of Associate Justice Johnson's recusal and given three options: (1) reschedule oral argument before Presiding Justice Lillie, Associate Justice Woods and a substitute for Associate Justice Johnson on August 8, 1996; (2) agree to a panel consisting of Presiding Justice Lillie and Associate Justice Woods to render a decision on the petition for writ of mandate as a two-judge court; or (3) agree that a substitute justice could listen to the audiotape of oral argument on the petition before Division Seven on June 13, 1996, and then participate in the decision with Presiding Justice Lillie and Associate Justice Woods, without further oral argument.

On July 1, 1996, petitioners and real parties in interest and all counsel stipulated in writing that "the Petition for Writ of Mandate filed herein on March 13, 1996, can be decided by a two-judge court consisting of Justices Mildred Lillie and Fred Woods."