**Robyn ASTAIRE, Plaintiff–Appellee,**

v.

**BEST FILM & VIDEO CORP.,**
**Defendant–Appellant.**

**Robyn ASTAIRE, Plaintiff–Appellant,**

v.

**BEST FILM & VIDEO CORP.,**
**Defendant–Appellee.**

**Nos. 95–56632, 95–56633.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 3, 1997.

Decided June 20, 1997.

William E. Wegner, Gibson, Dunn & Crutcher, Los Angeles, CA, for plaintiff-appellee-cross-appellant.

George R. Hedges, Hedges & Caldwell, Los Angeles, CA, for defendant-appellant-cross-appellee.

Angela S. Alberts, Theodore J. Minch and Christine M. Sovich, Indianapolis, IN, in house counsel for amicus CMG Worldwide, Inc.

Robert C. Vanderet, Neil S. Jahss, O'Melveny & Myers, Los Angeles, CA, for amici CBS Inc., Fox, Inc., National Broadcasting Co., Inc., and Warner Bros.

Dean T. Barnhard, Barnes & Thornberg, Indianapolis, IN, Shirley M. Hufstedler, Morrison & Foerster, Los Angeles, CA, for amici Wayne Enterprises Ltd., Wayne Productions, Inc., the Screen Actors Guild, Inc., et al.

Before: SCHROEDER, WIGGINS and LEAVY, Circuit Judges.

Opinion by Judge WIGGINS; Dissent by Judge SCHROEDER.

WIGGINS, Circuit Judge:

Best Film & Video Corporation ("Best") is a New York corporation which manufactures, markets, and distributes pre-recorded videotapes. Robyn Astaire ("Mrs. Astaire") is the widow of the legendary performer Fred Astaire. Mrs. Astaire sued Best in federal district court, alleging that Best's use of her late husband's image in a series of dance instructional videotapes violated her statutory right to control such use under California law. Although the district court concluded that Astaire's image was not used for the purpose of advertising, selling, or soliciting the purchase of the videotapes, the district court granted summary judgment in favor of Mrs. Astaire. Both sides appeal. Concluding that Best's use of Astaire's image is

exempt from liability pursuant to Cal. Civ. Code § 990(n), we reverse.

## BACKGROUND

In 1965, Fred Astaire granted the Ronby Corporation ("Ronby") an exclusive license to use his name in connection with the operation of dance studios, schools, and related activities. Astaire also granted Ronby the right to use certain pictures, photographs, and other likenesses of himself as had been used under a previous agreement, as well as any new photographs and likenesses that he approved in writing.

Twenty-four years later, Best entered into an agreement with Ronby to produce a series of dance instructional videotapes using the Fred Astaire Dance Studios name and licenses. Since October 1989, Best has been manufacturing and distributing a series of five videotapes known as the "Fred Astaire Dance Series." The videotapes are each about thirty minutes long and provide instruction in a type of dancing, with titles such as "Swing," "Latin Dancing," and "Ballroom."

Each videotape is packaged in a box prominently labelled "Fred Astaire Franchised Dance Studios" on every side. The back of the box features the following quote attributed to Astaire: "Some people feel that good dancers are born. All the good dancers I've known have been taught or trained." The back also contains a description of the videotape that refers to Astaire as "the master" and "the world's greatest dancer."

The videotape itself begins with an introductory segment. After Best's logo is shown, the title "Fred Astaire Dance Studios Presents How to Dance Series" appears on the screen. Then, before any other footage or narration, the videotape contains about ninety seconds of footage from two of Astaire's films-*Second Chorus* and *Royal Wedding*-in which Astaire is shown dancing alone and with a partner ("the Astaire film clips"). Some still photographs of Astaire follow, and then a narrator appears on a stage adorned with more Astaire photographs. The narrator then introduces the series and the instructional portion of the video.

Fred Astaire died in 1987. He was survived by his wife, Robyn, who has succeeded to all rights in his name, voice, signature, photograph, likeness and persona under Cal. Civ.Code § 990.[1] In 1989, Mrs. Astaire sued Best and others in federal district court, alleging *inter alia* that the Best videotapes violated her § 990 rights by using Astaire's image as it appears in the clips from *Second Chorus* and *Royal Wedding* without her permission. Although Mrs. Astaire originally contended otherwise, the parties no longer dispute that Best's use of Astaire's name and the still photographs are authorized under Astaire's agreement with Ronby. Thus, this case focuses entirely on whether § 990 provides Mrs. Astaire with a claim against Best's use of the Astaire film clips.

1. Section 990 provides, in relevant part:

(a) Any person who uses a deceased personality's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for the purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, without prior consent from the person or persons specified in subdivision (c), shall be liable for any damages sustained by the person or persons injured as a result thereof....

(h) As used in this section, "deceased personality" means any natural person whose name, voice, signature, photograph, or likeness has commercial value at the time of his or her death....

(i) As used in this section, "photograph" means any photograph or photographic reproduction, still or moving, or any video tape or live television transmission, of any person, such that the deceased personality is readily identifiable....

(n) This section shall not apply to the use of a deceased personality's name, voice, signature, photograph, or likeness, in any of the following instances:

(1) A play, book, magazine, newspaper, musical composition, film, radio or television program, other than an advertisement or commercial announcement not exempt under paragraph (4).

(2) Material that is of political or newsworthy value.

(3) Single and original works of fine art.

(4) An advertisement or commercial announcement for a use permitted by paragraph (1), (2), or (3).

Cal. Civ.Code § 990 (West Supp.1997).

After several years of proceedings, the district court entered a judgment which made the following legal determinations: (1) Best's use of the Astaire film clips was covered by § 990(a)'s "on or in products, merchandise, or goods" language; (2) Best's use of the Astaire film clips was not a use for "advertising, selling, or soliciting" in violation of § 990(a); (3) Best's use of the Astaire film clips was not exempt under § 990(n); (4) Mrs. Astaire's § 990 claim was not preempted by the federal Copyright Act; and (5) Best's use of Astaire's likeness was not protected by the First Amendment. Both sides appeal. We have jurisdiction under 28 U.S.C. § 1291.

### DISCUSSION

#### I. *Standard of Review*

■ We review the district court's decision on an issue of state law under the same de novo standard applied to decisions of federal law. *Mastro v. Witt*, 39 F.3d 238, 241 (9th Cir.1994). For questions of California law, we must apply the law as we believe the California Supreme Court would apply it. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1556 (9th Cir.1991). In the absence of a California Supreme Court decision, we must predict how the California Supreme Court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises and restatements as guidance. *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir.1996).

#### II. *Section 990*

■ Many of the parties' arguments focus on § 990. Best argues that the district court erred when it concluded that its use of the Astaire film clips violated the "on or in products, merchandise, or goods" prong of the statute. Best also contends that the district court erred when it concluded that its use of the Astaire film clips was not exempt under subsection (n). Mrs. Astaire argues that the district court erred when it concluded that Best's use of the Astaire film clips did not violate the "advertising, selling, or soliciting" prong of subsection (a). We first address Best's subsection (n) argument, because if

Best's use is exempt from § 990 liability altogether, we need not reach the other issues presented by this case.

We begin by reviewing California law on statutory interpretation. The California Supreme Court recently stated that "[the] first task in construing a statute is to ascertain the intent of the legislature so as to effectuate the purpose of the law." *Quintano v. Mercury Cas. Co.*, 11 Cal.4th 1049, 48 Cal. Rptr.2d 1, 906 P.2d 1057, 1060 (1995). This process of apprehending the legislature's intent sensibly starts with the statute's language:

> In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.... The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.

*Dyna–Med, Inc. v. Fair Employment & Housing Comm'n*, 43 Cal.3d 1379, 241 Cal. Rptr. 67, 743 P.2d 1323, 1326 (1987).

With these principles in mind, we turn to the language of the statute. Section 990(n) provides:

> (n) This section shall not apply to the use of a deceased personality's name, voice, signature, photograph, or likeness, in any of the following instances:

> (1) A play, book, magazine, newspaper, musical composition, film, radio or television program, other than an advertisement or commercial announcement not exempt under paragraph (4).

> (2) Material that is of political or newsworthy value.

> (3) Single and original works of fine art.

> (4) An advertisement or commercial announcement for a use permitted by paragraph (1), (2), or (3).

Cal. Civ.Code § 990(n).

Giving this language its ordinary and usual meaning, this provision tells us that the

following uses are exempt from § 990 liability: use in a play, book, magazine, newspaper, musical composition, film, radio or television program; use in material that is of political or newsworthy value; use in single and original works of fine art; and use in an advertisement or commercial announcement for any of the aforementioned uses. However, subsection (n)(1) limits the exemption for use in a play, book, magazine, newspaper, musical composition, film, radio or television program: such uses are not exempt if they are advertisements or commercial announcements. However, that limitation is also limited: such advertisements or commercial announcements may still be exempt under subsection (n)(4), the provision which exempts advertisements and commercial announcements for the uses described in subsections (n)(1), (n)(2), and (n)(3). Thus, to determine whether a use is exempt under subsection (n)(1) requires reference to subsection (n)(4), which in turn refers back to subsections (n)(1), (n)(2), and (n)(3).

Given this fairly convoluted statutory scheme, a few examples help us determine what these provisions mean:

*Example 1.* Suppose someone writes a magazine article about the history of television that uses a deceased personality's name without authorization. Neither the writer nor the magazine publisher could be sued under § 990: the writer's use of the deceased personality's name would be exempt from § 990 liability pursuant to subsection (n)(1).

*Example 2.* Suppose that an automobile manufacturer wanted to advertise its latest model in the same magazine with a splashy color layout that included the picture of a deceased personality. Although the use appears in a magazine, the use of the deceased personality's photograph would not be exempt under subsection (n)(1) because it appears in an advertisement. The use is not permitted in subsections (n)(1), (n)(2), or (n)(3), so it is not exempt under subsection (n)(4).

*Example 3.* Suppose that the magazine publisher from Example 1 wanted to advertise its magazine by referring to various articles that had appeared within its pages, including the article about the history of cinema. If that advertisement used the deceased personality's name, that use would be exempt under subsection (n)(4), because the advertisement was for a magazine, a use permitted by subsection (n)(1).

With these examples in mind, we turn to Best's use of the Astaire film clips. Best's use of the Astaire film clips appears on a pre-recorded videotape. Although subsection (n)(1) exempts films and television programs, it does not mention videotapes. Ordinarily, if the language of the statute is clear and unambiguous, there is no need to resort to the indicia of the intent of the legislature. *Lungren v. Deukmejian,* 45 Cal.3d 727, 248 Cal.Rptr. 115, 755 P.2d 299, 303–04 (1988). However, this "plain meaning" rule "does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose." *Id.* at 120, 755 P.2d at 304. "It is a settled rule of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." *Younger v. Superior Court,* 21 Cal.3d 102, 145 Cal.Rptr. 674, 577 P.2d 1014, 1021–22 (1978). "The intent prevails over the letter, and the letter will, if possible, be so read so to conform to the spirit of the act." *Lungren,* 248 Cal. Rptr. 115, 755 P.2d at 304.

Interpreting subsection (n)(1) to exempt a film or television program but not a videotape creates an absurd result: a motion picture is exempt from § 990 liability when it is shown in a theater or on cable television but not when someone rents it at a video store and plays it on his VCR. Moreover, a narrow construction of "film" and "television program" would be inconsistent with § 990(i), which defines "photograph" broadly to include "any photographic reproduction, still or moving, of any video tape or live television transmission ... such that the deceased personality is readily identifiable." It would be anomalous if the definition of photograph included a videotape recording of a film but "film" did not. Consequently, we conclude that the California Supreme Court would not adhere to the literal language of subsection (n)(1); rather, we conclude that the term

"film" in subsection (n)(1) encompasses Best's pre-recorded videotapes.

However, our inquiry is not yet complete. As Example 2 illustrates, a use is not automatically exempt because it is listed in the first part of subsection (n)(1). The uses listed in the first part of subsection (n)(1) are not exempt if they are "advertisement[s] or commercial announcement[s] not exempt under [subsection] (n)(4)." The parties dispute whether Best's use of the Astaire film clips is an advertisement or commercial announcement. We need not resolve this dispute, however, because Best's use of the Astaire film clips is exempt from liability in either case.

If Best's use of the Astaire film clips is not an advertisement or commercial announcement, then the second part of subsection (n)(1) does not apply. Accordingly, Best's use is exempt from liability pursuant to subsection (n)(1). If, however, we assume for argument's sake that Best's use of the Astaire film clips is an advertisement or commercial announcement, Best's use is still exempt from liability. If the Astaire film clips are an advertisement, they are certainly an advertisement for the videotapes themselves rather than some other product. As Example 3 illustrates, subsection (n)(4) exempts advertisements and commercial announcements for uses permitted in subsections (n)(1), (n)(2), and (n)(3). Because Best's videotapes are among the uses exempted by the first part of subsection (n)(1), subsection (n)(4) provides that even if Best's use of the Astaire film clips is an advertisement or commercial announcement, such a use is exempt from liability.

Mrs. Astaire argues that even if videotapes are covered by the first part of subsection (n)(1), Best's use of the Astaire film clips is not exempt because such a use is an advertisement or commercial announcement. Mrs. Astaire's argument, however, ignores the last five words of subsection (n)(1), which refer to subsection (n)(4). We are not free to ignore this language, because we must attempt to give each part of the statute significance. The only plausible reading of subsection (n)(4) is that it exempts advertisements and commercial announcements for the uses permitted by the preceding three subsections.

In sum, we conclude that when subsection (n) is read in its entirety, the only interpretation of its plain language which is internally consistent and gives effect to each phrase and clause of the provisions leads to the conclusion that Best's use of the Astaire film clips is exempt. Rather than end the inquiry here, however, under California law we must determine whether the meaning of the plain language comports with the legislature's purpose.

■ Mrs. Astaire asserts that the legislative history of Senate Bill 613 ("SB 613"), the legislation which enacted § 990 in 1984, supports the district court's conclusion that subsection (n)(1) creates a limited exception for "legitimate historical, fictional, and biographical accounts of deceased celebrities." Mrs. Astaire asserts that because the Astaire film clips were included in Best's videotapes to make them more attractive and salable, the exemption of subsection (n)(1) does not apply.

■ To support her argument that the Legislature intended subsection (n)(1)'s exemption to be limited to legitimate historical, biographical, and fictional works, Mrs. Astaire principally relies on several letters written by the author of SB 613. No matter how illuminating we might find these letters, California law generally prevents us from "consider[ing] the motives or understandings of an individual legislator even if he or she authored the statute." *Williams v. Garcetti,* 5 Cal.4th 561, 20 Cal.Rptr.2d 341, 853 P.2d 507, 510 (1993) (quoting *Delaney v. Superior Court,* 50 Cal.3d 785, 268 Cal.Rptr. 753, 762 n. 12, 789 P.2d 934, 943 n. 12 (1990)). As a result, we may not consider the various letters written by the author of SB 613.

■ We may consider, however, "the history of the statute, committee reports, and staff bill reports ... to determine the intent of the Legislature." *DeCastro West Chodorow & Burns, Inc. v. Superior Court,* 47 Cal.App.4th 410, 54 Cal.Rptr.2d 792, 798 (1996). We may also consider the evolution of a proposed statute after its original introduction in the California State Senate or

Assembly, as such evolution may "offer considerable enlightenment as to legislative intent." *People v. Goodloe*, 37 Cal.App.4th 485, 44 Cal.Rptr.2d 15, 19 (1995).

As originally introduced, SB 613 did not contain § 990 at all, instead focusing on modifications to existing statutory provisions to create a right of publicity for the heirs and descendents of deceased personalities. After the bill was passed by the Senate, however, it was amended in the Assembly several times. On June 12, 1984, § 990(n) appeared for the first time in the amended legislation. It read:

> Nothing in this section shall be construed to derogate from any rights protected by constitutional guarantees of freedom of speech or freedom of the press, such as the right to use a deceased personality's name, voice, signature, photograph, or likeness in a play, book, magazine, newspaper, film, television program, or similar medium of expression, to the extent the use is protected by the constitutional guarantees of freedom of speech or freedom of the press.

S.B. 613, 1983–84 Reg. Sess. (Cal.1984) (hereinafter "S.B. 613") (as amended June 12, 1984).

A staff report on this version of SB 613 criticized this language for being superfluous: "[i]rrespective of this stated intent, a defendant who has used a person's name, voice, etc. without authorization may assert a First Amendment privilege." Staff of Assembly Comm. on Judiciary, 1983–84 Reg. Sess., *Report on S.B. 613 (Campbell) As Amended 6/12/84* at 6 (Cal.1984). Shortly thereafter, § 990(n) was amended to its current version, which does not contain the language explicitly limiting the scope of its exemption to constitutionally protected uses. *See* S.B. 613 (as amended July 3, 1984).

The Legislature's removal of the language "to the extent the use is protected by the constitutional guarantees of freedom of speech or freedom of the press" from SB 613 is a telling clue as to the Legislature's intent. By deleting this language, the Legislature demonstrated an intent to adopt a broader exemption that was not limited to constitutionally protected uses. In other words, the

evolution of subsection (n) demonstrates that the interpretation of the statute we conclude is required by the plain language is consistent with the Legislature's intent.

The same staff report on SB 613 describes the bill generally as follows:

> [T]he bill is intended to address circumstances in which (a) commercial gain is had through the exploitation of the name, voice, signature, photograph, or likeness of a celebrity or public figure in the marketing of goods or services or (b) a celebrity or public figure is subjected to abuse or ridicule in the form of a marketed product. Such goods or services typically involved the use of a *deceased* celebrity's name or likeness, e.g., on posters, T-shirts, porcelain plates, and other collectibles; in toys, gadgets, and other merchandise; in look-alike services.

Staff of Assembly Comm. on Judiciary, *supra*, at 3–4. Several other legislative staff reports describe the legislation similarly. *See, e.g.*, Assembly Office of Research, 1983–84 Reg. Sess., *Report on S.B. 613 (Campbell) As Amended 8/9/84* at 3 (Cal.1984).

To the extent these reports reflect the Legislature's intent when it enacted § 990, our conclusion that Best's use of the Astaire film clips is exempt from liability is not inconsistent with this expressed intent. Best's use in no possible way subjects Fred Astaire to abuse or ridicule. Best's use is also nothing like the exploitative marketing uses described in these legislative staff reports.

We recognize, however, that Best placed these film clips in its videotapes for a reason: to make the videotapes more salable. Nevertheless, neither the statute nor the legislative history provides any support for treating Best's use of the Astaire film clips any differently from the use of the same clips in a documentary about dance in film, a use that Mrs. Astaire concedes would be exempt from liability. In short, whether the use is included to increase the marketability of a product cannot be the test of whether it is exempt from § 990 liability.

▮ Having considered what limited guidance the legislative history of SB 613

gives us regarding the meaning of subsection (n), we conclude that the legislative history does not support Mrs. Astaire's contentions that the exception for use in a "play, book, magazine, newspaper, musical composition, film, radio or television program" is limited to "legitimate historical, fictional, and biographical accounts of deceased celebrities." We conclude that the language of subsection (n) should be given its ordinary and usual meaning, and that Best's use of the Astaire film clips is accordingly exempt.[2]

## CONCLUSION

We conclude that Best's use of the late Fred Astaire's likeness/photograph in its "How to Dance" videotapes is exempt from § 990 liability pursuant to subsection (n).[3] Accordingly, the judgment of the district court is reversed and we remand with instructions to enter judgment in favor of Best.

REVERSED and REMANDED.

SCHROEDER, Circuit Judge, dissenting:

I dissent from the majority's conclusion that this use of Fred Astaire's legendary film performances, to preface a videotape having nothing to do with Fred Astaire, is exempt under the California statute. I dissent with respect, however, because the statute is not as clear as judges would like.

First I assume, without needing to decide, that the majority is correct in holding that subsection (n)(1) of Cal. Civ.Code § 990 exempts uses in videotapes, as well as in films, plays and other forms of expression, even though the statute does not expressly refer to videotapes. In my view, the majority goes wrong when it holds that this use of the Astaire footage is exempt as an "advertisement or commercial announcement" of an exempt use.

The majority reasons that the language of subsection (n)(4) exempts all advertisements or commercial announcements for plays, films, videotapes, etc. This is incorrect. That subsection exempts only advertisements or commercial announcements for uses permitted in the earlier paragraphs. The relevant exemption in this case must be the exemption in paragraph (1) for use of an image or likeness in a videotape, film, play or other expressive form. This footage of Astaire, however, is not used in the dance instruction video. The clips are used to promote the accompanying videotape of dance instruction that does not use Astaire's image. Had the clips been used in an announcement physically separated from the rest of the video, the use of the clips would clearly not have been exempt. The fact that Best chose to attach the clips to the dance instruction video in the form of a prefatory announcement does not change its essential nature: a commercial announcement of something unrelated to any exempted use of a photograph or likeness. The clips are therefore not advertising or announcing a "use permitted by paragraph (1)," and thus they are not exempt under paragraph (4).

Under the majority's reasoning one could with impunity hawk a videotape on fashion for the next century by introducing it with footage of Jacqueline Kennedy. The statute was intended to prevent such exploitation, not immunize it. I therefore must respectfully dissent.

---

**2.** Construing subsection (n) to exempt Best's use of the Astaire film clips also has the commendable effect of avoiding the potential First Amendment concern which would be created were Best held liable for using the film clips in an original videotape. Under California's principles of statutory construction, a construction which best avoids conflict with constitutional limitations is favored. *See J.A. Savage v. Pacific Gas & Elec. Co.*, 21 Cal.App.4th 434, 26 Cal.Rptr.2d 305, 312 (1993).

**3.** Having concluded that Best's use of the Astaire film clips is exempt from liability under § 990, we need not reach the other issues presented by the parties' arguments, *viz.*, whether Best's use is covered by § 990(a), whether Mrs. Astaire's § 990 claim is preempted by the federal Copyright Act, and whether holding Best liable violates the First Amendment.