Lord Simon **CAIRNS, et al., Plaintiffs,**

v.

**FRANKLIN MINT COMPANY, et al., Defendants.**

**No. CV98–3847FMC(BQRX).**

United States District Court, C.D. California.

June 22, 2000.

Shari Mulrooney Wollman, Mark S. Lee, Seth A. Gold, Alison Spear Ullendorff, Manatt, Phelps & Phillips, Los Angeles, CA, Cara R. Burns, Gradstein, Luskin & Van Dalsem, Los Angeles, CA, for Plaintiff.

Robert A. Meyer, Douglas E. Mirell, Daniel J. Friedman, Lisa Lyn Horlick, Robert N. Treiman, Loeb & Loeb, Los Angeles, CA, for Defendants.

**ORDER DENYING PLAINTIFFS' MOTION TO REINSTATE RIGHT OF PUBLICITY CLAIM AND MOTION FOR A PRELIMINARY INJUNCTION**

PAEZ, District Judge.

## I.

### *Introduction*

This action was originally assigned to Judge Richard A. Paez. Recently, however, with the appointment of Judge Paez to the Ninth Circuit Court of Appeals, this case was randomly reassigned to Judge Florence Marie Cooper. While this case was pending before Judge Paez, the plaintiffs filed a Motion to Reinstate Right to Publicity Claim and for Preliminary Injunction. Judge Paez heard that motion on March 20, 2000, and at the conclusion of the hearing submitted the matter for decision. On May 2, 2000, Judge Paez entered an order summarily denying plaintiffs' motion but indicated that he would file a more detailed memorandum explaining the basis for his ruling. Thus, Judge Paez now sets forth the reasons why plaintiffs' motion to reinstate and for preliminary injunction were properly denied.

At the outset, the Court notes that when it dismissed plaintiffs' right of publicity claim and denied the request for a preliminary injunction on October 16, 1999, it did so with a detailed summary of plaintiffs' factual allegations and legal claims. *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013 (C.D.Cal.1998). No useful purpose would be served to repeat that summary here. We simply note, to place plaintiffs' present motion in context, that plaintiffs seek damages for defendants alleged wrongful use of the late Princess Diana's name and likeness on commemorative items such as plates, jewelry and dolls, and in marketing such items to the general public.

One of the claims plaintiffs alleged, and the one dismissed by the court, was that defendants' use of the late Princess Diana's likeness violated the postmortem right of publicity recognized by California Civil Code § 990 (now codified at Civil Code § 3344.1). In dismissing this claim, the Court held that because then Civil Code § 990 did not contain a choice-of-law provision, Civil Code § 946 required application of British law. As British law does not recognize a right of publicity cause of action, the claim was dismissed with prejudice. The Court also denied plaintiffs' motion for a preliminary injunction finding that plaintiffs were not likely to prevail on the merits of any of their remaining claims.

Plaintiffs, having obtained leave from the Ninth Circuit to pursue an interlocutory appeal of the dismissal order, sought appellate review of both orders. On December 30, 1999 the Ninth Circuit affirmed both orders in an unpublished memorandum opinion.

In seeking to reinstate the right of publicity claim, plaintiffs assert that in 1999,

the California Legislature amended and recodified Civil Code § 990 to overrule the Court's holding in the dismissal order that Civil Code § 946 required application of British law to plaintiffs' right of publicity claim. They argue that a newly added choice-of-law provision now requires application of California, not British law. According to plaintiffs, subsection (n) of newly enacted § 3344.1 is a choice-of-law provision. Subsection (n) provides:

> This section shall apply to the adjudication of liability and the imposition of any damages or other remedies in cases in which the liability, damages, and other remedies arise from acts occurring directly in this state. For purposes of this section, acts giving rise to liability shall be limited to the use, on or in products, merchandise, goods, or services, or in advertising or selling, or soliciting purchases of, products, merchandise, goods, or services prohibited by this section. California Civil Code. § 3344.1(n).

For the reasons set forth below, the Court rejects plaintiffs' interpretation of this newly adopted statutory provision. To adopt plaintiffs' interpretation would require the Court to rewrite the statute; a task which is best left to the California Legislature.

## II.

### DISCUSSION

#### A. Standard

■ Although plaintiffs style their motion as a motion to reinstate their dismissed claim, it is more appropriately treated as a motion to file an amended complaint to add a claim for damages for defendants' alleged wrongful conduct since the effective date of the new statute, January 1, 2000. With the Ninth Circuit's affirmance of the dismissal order, all of plaintiffs' right of publicity claims that accrued prior to the effective date of the new statute are barred as law of the case. If subsection (n) of the new statute is a choice-of-law provision, then plaintiffs

would be entitled to amend their complaint to add such a claim for damages accruing from January 1, 2000. Because subsection (n) of section 3344.1 is not a choice-of-law provision, plaintiffs may not assert such a claim under this newly adopted statute. Although leave to amend should be freely granted, where the proposed amendment would be futile a motion to amend may be denied. *Saul v. United States,* 928 F.2d 829, 843 (9th Cir.1991). Thus, even treating plaintiffs' motion to reinstate as a motion to amend the complaint, the motion to reinstate and the related request for a preliminary injunction are DENIED.

#### B. California Civil Code Section 3344.1 and its Legislative History

##### 1. *The Nature of Legislative History*

In his concurrence in *Conroy v. Aniskoff,* 507 U.S. 511, 518–528, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993), Justice Scalia writes of the inherent difficulties of undue reliance on legislative history. Justice Scalia invokes a metaphor used by Judge Harold Leventhal who describes "legislative history as the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends." *Id.* at 519, 113 S.Ct. 1562. The flaw in legislative history, according to Justice Scalia, is that it can be twisted and manipulated by participants and observers alike. Both plaintiffs and defendants in this case lobbied vigorously before the Legislature in support of their respective positions. Hence, their attorneys participated actively in the legislative proceedings leading up to the adoption of § 3344.1(n). Both plaintiffs and defendants have provided the Court with excerpts of the legislative history that support their respective positions. After carefully reviewing the entire legislative history, the Court concludes that the plain language of subsection (n) is determinative; it is not and cannot be reasonably interpreted as a choice-of-law provision. There is no doubt, that the initial drafts of the proposed statute contained a choice-of-

law provision that, if enacted, would have overturned this Court's decision in *Cairns.* Rarely, however, does the initial language of a proposed bill remain intact throughout the legislative process. The nature of the legislative process inevitably results in compromise. It is clear from a review of the legislative history here, that the choice-of-law provision in an early version of the proposed statute fell victim to just such a compromise and was never enacted.

### 2. *Plain Language*

■ In determining the meaning of a statutory provision, the Court must first look to the plain language of the statute. *Astaire v. Best Film & Video Corp.,* 116 F.3d 1297, 1300 (9th Cir.1997), *amended,* 136 F.3d 1208 (9th Cir.1998), *cert. denied,* 525 U.S. 868, 119 S.Ct. 161, 142 L.Ed.2d 132 (1998) *citing Dyna–Med, Inc. v. Fair Employment & Housing Comm'n,* 43 Cal.3d 1379, 241 Cal.Rptr. 67, 743 P.2d 1323 (1987). The California Supreme Court held in *Dyna–Med* that courts must "giv[e] to the language its usual, ordinary import and accord[ ] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose...." *Id.* at 1386–87, 241 Cal.Rptr. 67, 743 P.2d 1323.

■ The provision in question, subdivision 3344.1(n) states that:

This section shall apply to the adjudication of liability and the imposition of any damages or other remedies in cases in which the liability, damages, and other remedies arise from acts occurring directly in this state. For purposes of this section, acts giving rise to liability shall be limited to the use, on or in products, merchandise, goods, or services, or in advertising or selling, or soliciting purchases of, products, merchandise, goods,

or services prohibited by this section. California Civil Code. § 3344.1(n).

The only reasonable interpretation of this provision from its plain language is that it applies only to claims that arise out of acts occurring in California. The provision simply addresses the reach of the statute's coverage. Plaintiffs argue that the language means that any action, regardless of the domicile of the decedent, may be brought in California, as long as it involves some actionable conduct that occurred in California. This interpretation rewrites the statute.[1] Plaintiffs' interpretation of the provision goes beyond the plain language as it requires the Court to read in language regarding domicile that is not present. Even if the plain language could be interpreted in this manner, such a reading does not comport with the legislative history.

### 3. *Legislative History*

The Court finds that the language of the statute is clear and that there is no need to inquire further. Nonetheless, the California Supreme Court has held that even if a court determines that the plain meaning of the statute is clear, it may still inquire as to whether the "literal meaning of a statute comports with its purpose." *Lungren v. Deukmejian,* 45 Cal.3d 727, 729, 248 Cal.Rptr. 115, 755 P.2d 299 (1988). If the Court determines that a literal reading will result in an absurd result, then "intent [will] prevail[ ] over the letter, and the letter will, if possible, be read so to conform to the spirit of the act." *Astaire,* 116 F.3d at 1301.

In order to ascertain the intent of the Legislature, the Court may look at "the history of the statute, committee reports, and staff bill reports." *Id. citing DeCas-*

---

1. In its dismissal order, the Court noted how the Legislature could have included a choice-of-law provision in former § 990. The Court noted "[h]ad it intended to create such an exception, the Legislature could easily have included a choice-of-law provision indicating that California law dictates whether the right

of publicity is a property right included in a decedent's estate." *Cairns,* 24 F.Supp.2d at 1027. If the Legislature disagreed with this Court's application of Section 946 to Section 990, it could easily have rectified the situation by stating that Section 946 was not applicable.

*tro West Chodorow & Burns, Inc. v. Superior Court*, 47 Cal.App.4th 410, 411, 54 Cal.Rptr.2d 792 (1996). The parties have supplied the Court with all relevant information including, drafts of the legislation, staff reports, and transcripts of various legislative hearings.

### a. Direct Legislative History

On January 20, 1999, Senator John Burton introduced Senate Bill 209 which initially contained a choice-of-law provision at subsection (*o*). Subsection (*o*) stated "[a] plaintiff has standing to bring an action pursuant to this section if any of the acts giving rise to the action occurred in this state, whether or not the plaintiff is a domiciliary of this state." (Pl's Reply, Exh. B at 8.) A subsequent draft altered the provision somewhat to state "whether or not the decedent was a domiciliary of this state at the time of death." *Id.*

At a June 22, 1999 Judiciary Committee hearing, Assembly Member Pacheco asked Senator Burton, the bill's original sponsor, if he was willing to accept two amendments to the bill. One of these amendments deleted the language in subsection (*o*), i.e. that the statute was applicable whether or not the decedent was a domiciliary of this state at the time of death. The amendment inserted new language, found at subsection (n) which simply states that the section applies to acts occurring in California. In response to Assembly Member Pacheco, Senator Burton attempted to reinsert the following language "whether or not the decedent was a domiciliary of this state at the time of the death" back into the statute, after the words "directly in this state." (Pl's Reply, Exh. B., Mirrell Decl. ¶ 11 at 35.)

Pacheco asked Burton why this amendment was necessary, and Burton requested that Mark Lee, plaintiffs' attorney, speak to the issue. Lee explained that the provision was necessary to clarify existing law in the wake of this Court's decision in *Cairns*.

Thereafter, Assembly Member Kuehl explained that this language had been deleted in order to maintain neutrality on the choice-of-law issue. Specifically, Kuehl said "[w]e somewhat (sic) with notable lack of courage, I think, decided not to jump into that question because, at the moment, the law does not either require one to be a domiciliary—at least in the statutory law—does not require this or not require this. I didn't want to go that far." In response, Burton withdrew his amendment, indicating that he might later try and reintroduce the provision.[2] As such, the June 29, 1999 version of the bill that reflects the June 22, 1999 changes does not contain any reference to domicile. *Id.* at 35–36. The law was enacted as amended.

The fact that the language specifically addressing the choice-of-law issue was deleted is relevant in how the Court construes the statute. In *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1530 (9th Cir.1995), the Ninth Circuit held that "California courts give substantial weight to the deletion of a provision during the drafting stage." The fact that the Legislature specifically considered and rejected a provision "is most persuasive to the conclusion that the act should not be construed to include the omitted provision." *Id.*

Plaintiffs rely on the California Assembly Committee on Judiciary's Analysis of Senate Bill No. 209, as Amended March 3, 1999, that suggests the amendment that

---

**2.** Plaintiffs are correct that overturning *Cairns* was one of the original motivations, albeit a secondary one, of the bill's sponsor. The newly passed statute, which is entitled the "Astaire Celebrity Image Protection Act" was enacted principally to eliminate exemptions for certain types of media that the Ninth Circuit found in Section 990 in *Astaire v. Best Film & Video Corp.*, 116 F.3d 1297 (9th Cir.

1997), *amended,* 136 F.3d 1208 (9th Cir. 1998), *cert. denied,* 525 U.S. 868, 119 S.Ct. 161, 142 L.Ed.2d 132 (1998).

*Cairns,* was Senator Burton's second motivation. In the final analysis he was forced to except a compromise and the language specifically stating that non-California domiciliaries are covered was deleted.

became subsection (n) was, like the previous subsection (*o*), an attempt to overturn *Cairns*. The Analysis argues that the language that became subsection (n) "preserve[s] the author's intent in not limiting the bill's applicability to heirs of celebrities who were domiciliaries of California at the time of death". (Pl's Reply, Exh. B. at 109). This analysis was prepared in March 1999, while the amendment and Committee debate surrounding it occurred on June 22, 1999. The Court gives little weight to legislative history predating the amendment to the statute.

The colloquy surrounding the amendment makes it clear that the domicile language was intentionally stricken from the bill so that the Legislature would remain neutral on the very issue decided by this Court in *Cairns*.

Most important is that the critical language affording non-Californians the right to sue under California law was stricken from the bill prior to its enactment by the Legislature. Plaintiffs give no reason why this language was not included in the final version of the bill. Senator Burton's attempt to resubmit the domicile language into the provision that eventually became subsection (n) is further evidence that the final language of subsection (n) did not address the domicile issue. Lastly, the fact that Assembly Member Kuehl specifically stated an intent to remain neutral on this issue, coupled with Burton's reservation of the right to reintroduce the domicile language at a later date, confirms that the plain language of subsection (n) is in conformity with the Legislature's intent in passing the bill.

### b. Underlying Legislative History

As noted above, there are inherent difficulties in trying to sort through the various sources of legislative history. Both parties have supplied the Court with a multitude of sources from which they argue the Court can discern the legislature's true intent. Unfortunately, with the exception of the letter by Professor Erwin Chemerinsky, the vast majority of the evidence submitted is irrelevant to determining the issue at hand.

#### i. *Chemerinsky, et al. Letter*

The concerns of the legislators over the domicile issue were most likely prompted, in part, by a letter written to Assembly Member Kuehl from Professors Chemerinsky (USC), Dougherty (Loyola), Barnett (Boalt), Volokh (Loyola), Manheim (Loyola), Madow (Brooklyn), Samuelson (Boalt), Williams (Loyola), Lemley (Texas), Sobel (Entertainment Law Reporter). (Pl's Reply, Exh. B., at 85–89.) The primary concern of the professors with proposed subsection (*o*) was its territorial reach, not the choice-of-law provision. The professors were concerned that the original language granting such a far reaching right of action—"if any of the acts giving rise to the action occurred in this state ..."—was unconstitutional under *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 572–73, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). This language was modified in the final version of the bill to provide that liability can only "arise from acts occurring directly in this state." Cal. Civ.Code § 3344.1(n).

Secondarily, and of interest to the Court, the professors stated that the provision ran afoul of the public policy underlying Civil Code § 990, the original provision that Senate Bill 209 would amend. *Id.* at 87. The intent behind former Civil Code § 990, was to protect California residents, as the state has no legitimate interest in protecting deceased non-California celebrities. The purpose was to encourage celebrities to live in California and not move to states with greater protection. The problem with the amendment, according to the professors, is that California would be encouraging celebrities to live outside of the state. The professors "questioned the wisdom of opening up California's judicial system to the estates of every personality in the world." *Id.* 87–88.

Lastly, the professors cautioned the Legislature to proceed cautiously in light of the ongoing litigation in this case. The professors noted that subsection (*o*) was apparently intended to overturn this Court's decision in *Cairns*. The professors cautioned the Legislature to await the outcome of the Ninth Circuit appeal. "Taking action to undo the results of a trial court decision that awaits appellate action is precipitous indeed." *Id.* at 88.

While the above cited letter is not part of the bill's actual legislative history, in conjunction with comments made by the legislators and the ensuing changes made to the legislation that reflect the changes sought by the professors, it appears that the letter influenced the final language in the bill. As such, it further supports the Court's conclusion that subsection 3344.1(n) is not a choice-of-law provision.

### ii. *Improper Evidence of Legislative Intent*

■ In an attempt to clarify the legislative history, both parties submitted declarations of committee counsel who offer differing views of the legislation and articles commenting on the passage of the bill that favor their respective positions. While the comments of the two legislative aides may be illuminating, the Court may not rely on their declarations. California law prohibits Courts from "consider[ing] the motives or understandings of an individual legislator even if he or she authored the statute." *Astaire,* 116 F.3d at 1302 *citing Williams v. Garcetti,* 5 Cal.4th 561, 20 Cal.Rptr.2d 341, 853 P.2d 507 (1993). If the Court is not permitted to consider statements of the bill's authors as evidence of intent, the Court clearly cannot consider the statements of their aides.

### C. Ninth Circuit Opinion

The Ninth Circuit affirmed the Court's dismissal of the right of publicity claim on December 30, 1999. In dicta the Court initially wrote that

the California Legislature amended Section 990, effective January 1, 2000, to expressly include a choice-of-law provision that expands coverage of the statute to heirs of celebrities who were not domiciliaries of California at the time of death. See Senate Bill 209, 1999 Legis. Sess. (Cal.1999).

This Court then issued a minute order postponing the resolution of plaintiffs' motion to reinstate, pending the Ninth Circuit's ruling on the defendants' petition for rehearing. The Court specifically stated that

the Ninth Circuit characterized a recent amendment, effective January 1, 2000, to California's right to publicity statute, California Civil Code Section 3344.1, as a 'choice-of-law provision.' The Court may have to consider whether the new amendment is a choice-of-law provision in order to rule on the pending motion. Upon a review of the parties' papers, the text of the amended statute, and its legislative history, it appears to the Court that this new provision may not be a choice-of-law provision.

In response, the Ninth Circuit panel issued an order amending its previous ruling to delete the words "choice-of-law" but otherwise denying the petition for rehearing.

By deleting the phrase "choice-of-law" from its opinion, the Ninth Circuit has signaled its agreement with the Court's initial and current analysis that the amendment—subsection (n)—is not a choice-of-law provision. The memorandum opinion, however, still contains language that the provision "expands coverage of the statute to heirs of celebrities who were not domiciliaries of California at the time of death."

To the extent that the Ninth Circuit panel's comments can be perceived as indicating that the provision is a choice-of-law provision, they are not binding on this Court because (1) the comments are of and concerning the Senate Bill and not the precise statutory language adopted by the

Legislature and (2) the comments are dicta.

In *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990), the Ninth Circuit stated:

> The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs. Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in [the] previous disposition." A significant corollary to the doctrine is that dicta have no preclusive effect. (citations omitted).

As the Ninth Circuit panel cites not to subsection (n) of 3344.1, but rather generally to Senate Bill No. 209, the Court finds that the Ninth Circuit has not spoken directly, in dicta or otherwise, on the issue raised by plaintiffs' motion. As noted above, the legislation that eventually became Section 3344.1 went through several drafts. It did, in fact, contain a choice-of-law provision in several of the drafts. Even if the language of the Ninth Circuit's memorandum disposition was binding on the Court, as more than dicta, the Ninth Circuit has not spoken specifically on subsection (n). Under these circumstances, the Court is at liberty to interpret the new provision consistent with its plain language and the relevant legislative history as warranted.

Even if the Ninth Circuit's opinion can be construed as addressing subsection (n), the statement would still not be binding upon this Court as it is dicta. The comment on the Senate Bill was not necessary to the Circuit's decision and therefore is nothing more than dicta. *Milgard Tempering, Inc.*, 902 F.2d at 716. The Ninth Circuit's decision was limited to upholding this Court analysis of Civil Code §§ 990 and 964.

## D. Preliminary Injunction

There is no need for the Court to address this issue as the Court has determined that plaintiffs cannot in fact prevail on the merits of their right of publicity claim. As a "moving party must show, at an irreducible minimum, that there is a fair chance of success on the merits," the related application for a preliminary injunction is DENIED. *Cairns*, 24 F.Supp.2d. at 1043 *citing Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir.1994).

## III.

### *Conclusion*

For the foregoing reasons, plaintiffs' motion to reinstate the right of publicity claim and request for a preliminary injunction as previously ordered are DENIED. IT IS SO ORDERED.