NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   CC-12-1143-TaMkH |
| | ) | |
| JAMES F. BISHAY, | ) | Bk. No.   8:08-bk-11374-ES |
| | ) | |
| Debtor. | ) | Adv. No.  8:10-ap-01142-ES |
| _____ | ) | |
| JAMES F. BISHAY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | M E M O R A N D U M[1] |
| | ) | |
| RICHARD A. MARSHACK; | ) | |
| JP MORGAN CHASE, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on September 21, 2012
at Pasadena, California

Filed - October 24, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Erithe A. Smith, Bankruptcy Judge, Presiding
_____

Appearances:   Alan Leigh Armstrong for Appellant James F.
Bishay; Donald W. Sieveke for Appellee Richard A.
Marshack
_____

Before: TAYLOR,[2] MARKELL, and HOLLOWELL, Bankruptcy Judges.

_____

[1]    This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

[2]    Hon. Laura S. Taylor, Bankruptcy Judge Southern
District of California, sitting by designation.

The appellant, Joseph Bishay, is the beneficiary of a trust deed recorded against the debtor's real property. He appeals from the bankruptcy court's judgment after trial determining that his trust deed was junior to another subsequently recorded trust deed. The bankruptcy court based its decision first on the finding that there was a contractual agreement to subordinate. The bankruptcy court reached this determination notwithstanding that a written subordination agreement was never introduced into evidence. The bankruptcy court, alternatively, based its ruling on an oral determination that equitable subrogation applied.[3] The appellant only raised issues relating to the contractual subordination determination in his statement of issues on appeal and in his opening brief. He discussed equitable subrogation only in his reply brief.

After a careful consideration of the parties' briefs and oral argument, review of the record provided, and independent analysis and application of the law, we hold that the appellant waived his right to dispute that equitable subrogation applied when he failed to raise this issue at any point on appeal prior to his reply, and, thus, we affirm on this basis. We further

---

[3] In the record, the parties use both the term "equitable subrogation" and the term "equitable subrogation." Equitable subordination in the bankruptcy context refers to 11 U.S.C. § 510(c). It requires misconduct and subordination as a result thereof. 4 Collier on Bankruptcy ¶ 510.05[2], p. 510-18 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2012). The record evidences that the parties here reference the state law theory of equitable subrogation involving effective subordination where, under certain circumstances, a lender pays an existing lienholder's claim and assumes (is subrogated to) the senior lender's priority. Miller & Starr, California Real Estate Third Edition, § 11:115, p. 11-355. The Panel will utilize the term "equitable subrogation" herein and will not reference "equitable subordination."

affirm on the grounds that the bankruptcy court correctly found that an actual agreement to subordinate existed, that it bound appellant, and that it was unnecessary for the bankruptcy court to determine the complete terms of the subordination agreement in connection with its ruling.

**FACTS**

On February 10, 2006, debtor James F. Bishay (the "Debtor") purchased a house in Huntington Beach, California (the "Property") and acquired title as his sole and separate property. On February 14, 2006, his wife, Deborah Westfield, also known as Deborah Bishay, quitclaimed her interest in the Property to the Debtor. On this same date, Citimortgage recorded a trust deed against the Property securing an obligation in the original principal amount of $1,000,000. Thereafter, on April 5, 2006, Citibank recorded a second trust deed securing an obligation in the original principal amount of $169,990.

On December 27, 2006, for no consideration, the Debtor transferred the Property to the Bishay Irrevocable Trust, James F. Bishay as Trustee (the "Bishay Trust"). On February 15, 2007, the Debtor, in his capacity as trustee of the Bishay Trust, executed and delivered a note in the original principal amount of $320,000 in favor of his brother and appellant, Joseph Bishay ("Joseph"[4]) and The Rock of Ages, a suspended California corporation owned or controlled by Joseph (the "Bishay Note").

---

[4] For the purposes of clarity and simplicity, the appellant will hereinafter be referred to as "Joseph." We intend no disrespect by this informality, but hope to avoid the confusion that could result from having both a debtor and a defendant with the last name Bishay and first names beginning with a "J".

- 3 -

Joseph and Rock of Ages recorded a trust deed (the "Bishay Trust Deed") securing the Bishay Note on March 16, 2007. The Bishay Trust Deed, thus, was subordinate to both the Citibank and Citimortgage trust deeds, and Joseph knew this was the case.

On November 6, 2007, and again for no consideration, the Bishay Trust transferred the Property to the Alpha and Omega Irrevocable Trust, Deborah Westfield as Trustee. On February 4, 2008, the Debtor's mother, Marsil Bishay, now acting as trustee of the Alpha and Omega Irrevocable Trust ("Alpha & Omega Trust"), borrowed $1,260,000 from Washington Mutual Bank ("WaMu") and used the proceeds in significant part to repay the Citibank and Citimortgage loans. On April 1, 2008, WaMu recorded a deed of trust (the "WaMu Trust Deed") securing the note evidencing this loan. There is no dispute that the parties to this transaction intended that the WaMu Trust Deed create a first priority lien against the Property.

On March 22, 2008, the Debtor filed his petition and initiated this chapter 7 bankruptcy.

On September 1, 2008, Richard A. Marshack, the chapter 7 trustee ("Trustee"), filed adversary proceeding 8:08-ap-01338 ES seeking to avoid the transfers of the Property to the Bishay Trust and to the Alpha & Omega Trust as fraudulent conveyances. The Trustee obtained a judgment avoiding these transfers and preserving the transferred asset for the benefit of the estate on April 19, 2010.

The Trustee initiated the subject adversary proceeding on March 19, 2010. The original complaint is not part of the record on appeal, but we have taken judicial notice of the bankruptcy

- 4 -

court docket and various documents filed through the electronic docketing system.  See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).  The docket in this proceeding evidences that the Trustee originally named only WaMu and Marsil Bishay as trustee of the Alpha & Omega Trust as defendants, but also included 10 Doe defendants.  Thereafter, he added JP Morgan Chase Bank, National Association, successor in interest to WaMu ("Chase"), California Reconveyance Company ("Cal Recon"), as the Trustee named in the WaMu Trust Deed, The Rock of Ages, and Joseph as defendants in place of Does 1 through 4.

The bankruptcy court eventually entered a summary judgment order adverse to Marsil Bishay as Trustee of the Alpha & Omega Trust and determined that she had no interest in the Property. The Trustee obtained a default judgment resolving the claims against The Rock of Ages and entered into a settlement agreement with Chase.  The resolution of the Chase claims also resolved all claims against Cal Recon, as Cal Recon was sued only as the trustee under the WaMu Trust Deed.

Thus, as of the trial date, the only unresolved issues pertained to Joseph's claim based on the alleged priority of the Bishay Trust Deed.[5]  Originally, the Trustee also objected to Joseph's claim, but the Trustee abandoned this issue before

---

[5]     The priority dispute was not directly discussed in any pleading, but the parties clearly contemplated this as an issue in a Pre-Trial Order, and it apparently arose from the generalized request in the amended complaint that the bankruptcy court determine the respective interests of the parties in and to the Property.

trial.

Prior to the trial, the Trustee and Joseph entered into a Pre-Trial Order and agreed, among other things, on the following facts:

> 18. Joseph Bishay testified in his deposition that on an unknown date, he subordinated his trust deed to the Washington Mutual Deed of trust. The subordination agreement was not recorded and has not been found.
>
> . . .
>
> 21. Joseph Bishay has testified that he understood that his deed of trust was in second position, behind the new deed of trust obtained by Marsil Bishay, in favor of Washington Mutual.
> 22. Prior to the recordation of his deed of trust, Joseph Bishay understood that Marsil Bishay intended to obtain a loan against [the Property], and that such deed of trust would be in first position.
> 23. Marsil Bishay negotiated and obtained the subordination of Joseph Bishay's deed of trust to the new deed of trust issued to WAMU against the [Property].

Pre-Trial Order, Dkt. 62, at 4.

The Pre-Trial Order also included a judicial requirement that the parties provide direct testimony (exclusive of adverse or rebuttal testimony) only by declaration. Finally, the Pre-Trial Order established the witnesses to be called at trial and the exhibits to be introduced at trial. Joseph's exhibits were the Bishay Trust Deed, the WaMu Trust Deed, and an equity purchase agreement dated March 8, 2007. The Trustee submitted a trial brief; Joseph did not. Neither party submitted declaratory evidence.

The bankruptcy court held the trial on February 21, 2012. At trial, the Trustee rested after introducing the Bishay Trust

Deed and the WaMu Trust Deed into evidence. Joseph's counsel, after attempting to call Joseph as a witness, acknowledged that he was bound by the Pre-Trial Order and could not introduce testimonial evidence at trial. Consequently, Joseph never testified. Joseph's counsel also did not seek to admit any documentary evidence. The Trustee then relied on the agreed facts of the Pre-Trial Order and requested judgment in his favor.

The Trustee argued two alternative theories - first, that the Bishay Trust Deed was subordinate to the WaMu Trust Deed because Joseph contractually agreed to subordinate the Bishay Trust Deed, and, second, that the doctrine of equitable subrogation operated to grant seniority to the WaMu Trust Deed. In opposition, counsel for Joseph offered a limited argument that the terms of the subordination agreement were unknown and that WaMu was negligent.

The bankruptcy court recited the admitted facts in the Pre-Trial Order and made an oral finding that the admitted facts provided adequate evidence of intent to subordinate and that, as Joseph advanced no new evidence, a judgment finding that the WaMu Trust Deed had priority over the Bishay Trust Deed was appropriate. The bankruptcy court stated that:

> . . . under the admitted facts and given that there is no counter evidence, either factually or legally, then this Court feels comfortable in making a finding consistent with the trial briefs submitted that there was a subordination agreement that was in effect at the time the Washington Mutual loan was made and that the intent was that the Washington Mutual loan would, in fact, be senior to the [Bishay Trust Deed].

Trial Tr. (Feb. 21, 2012) at 10:14-21.

The bankruptcy court also made an alternative oral finding that:

> the Plaintiff has also presented evidence sufficient to support a finding [] that the doctrine of equitable subordination should apply as well. So, judgment will be in favor of the Plaintiff.

Id. at 13:3-6.

Finally, the bankruptcy court stated its ultimate finding that, "under either theory, the Court finds in favor of the Plaintiff, Richard Marshack that there was a subordination agreement." Id. at 12:20-22.

On March 2, 2012, the bankruptcy court entered a separate written Judgment After Trial which stated:

> After considering the evidence and hearing argument, and for the reasons set forth in the Court's oral findings, IT IS HEREBY ADJUDGED: 1) Judgment in favor of the Plaintiff and against Defendant JOSEPH BISHAY. 2) The [Bishay Trust Deed] is hereby declared fully subordinate to the [WaMu Trust Deed].

Judgment After Trial, Dkt. 86, at 2:2-14.

Joseph timely appealed the bankruptcy court's Judgment After Trial and identified only one issue: "Did the bankruptcy court err in deciding that the [Bishay Trust Deed] was fully subordinate to the [WaMu Trust Deed] based on a Subordination Agreement that has not been found, without making a finding as to the wording or contents of that subordination agreement?" Appellant's Statement of Issue on Appeal (April 2, 2012) at 2. As the Trustee points out in his opening brief, Joseph failed to raise, as an issue on appeal, the bankruptcy court's alternative finding that the Bishay Trust Deed was subordinate to the WaMu

Trust Deed based on the doctrine of equitable subrogation. Joseph first addressed the equitable subrogation issue in his reply brief.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(K). Judgment was entered on the issue of the full subordination of the Bishay Trust Deed to the WaMu Trust Deed. The judgment is final because the judgment fully and finally disposed of the priority dispute, the only dispute then remaining in this adversary proceeding. See Kashani v. Fulton (In re Kashani), 190 B.R. 875, 882 (9th Cir. BAP 1995). Because the judgment underlying Joseph's appeal is final, we have jurisdiction pursuant to 28 U.S.C. § 158.

**ISSUES**

A. Whether Joseph waived his right to appeal the bankruptcy court's application of equitable subrogation.

B. Whether the bankruptcy court erred, as a matter of law, by finding subordination without first determining all the terms and conditions of subordination.

C. Whether the bankruptcy court erred, as a matter of fact, by finding the Bishay Trust Deed fully subordinate to the WaMu Trust Deed.

**STANDARD OF REVIEW**

We review "the bankruptcy court's conclusions of law de novo and factual findings for clear error." Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 32 (9th Cir. BAP 2008)(citations omitted). A factual determination is clearly erroneous if the appellate court, after reviewing the record, has

a definite and firm conviction that a mistake has been committed. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).

We review a bankruptcy court's interpretation of California law de novo in order to determine if it correctly applied the substantive law. Kipperman v. Proulx (In re Burns), 291 B.R. 846, 849 (9th Cir. BAP 2003); Astaire v. Best Film & Video Corp., 116 F.3d 1297, 1300 (9th Cir. 1997)(issues of state law are reviewed de novo). Mixed questions of law and fact are also reviewed de novo. Murray v. Bammer (In re Bammer), 131 F.3d 788, 792 (9th Cir. 1997). "A mixed question of law and fact occurs when the historical facts are established; the rule of law is undisputed . . . and the issue is whether the facts satisfy the legal rule." Id.

**DISCUSSION**

**A.  Joseph Waived His Right To Appeal The Bankruptcy Court's Determination Based On Equitable Subrogation.**

**1.  The Judgment Based On Equitable Subrogation Was Final.**

Joseph argues that he was not obligated to appeal from the bankruptcy court's determination that the theory of equitable subrogation resulted in a loss of the priority of his trust deed. He argues, thus, that he did not waive his right to appeal this determination. He bases his argument on the fact that the post trial judgment "does not mention equitable subrogation." Appellant's Reply Brief (June 21, 2012) at 1. He apparently claims that because the written Judgment After Trial did not expressly state that subordination was granted alternatively on the theory of equitable subrogation, that a judgment was not rendered on that theory.

- 10 -

In the absence of an order allowing an interlocutory appeal, an appellant may only appeal to a Bankruptcy Appellate Panel from final judgments, orders, or decrees of a bankruptcy judge. 28 U.S.C. § 158(a). To become final, the decision, order, or decree must end the litigation or dispose of complete claims of relief. In re Kashani, 190 B.R. at 882. The Ninth Circuit takes a flexible approach to determining the finality of a judgment or order such that even a minute order can be a final, appealable order if it: "fully adjudicates the issues and clearly evidences the court's intent that the order be the court's final act." Key Bar Invs. v. Cahn (In re Cahn), 188 B.R. 627, 629 (9th Cir. BAP 1995). A court's intent is evidenced by: "a clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as it is concerned, is the end of the case." Brown v. Wilshire Credit Corp. (In re Brown), 484 F.3d 1116, 1122 (9th Cir. 2007) (citation omitted). This flexible approach is intended to ensure that a case does not make "two complete trips through the appellate process." Lewis v. Law Offices of Nicholas A. Franke (In re Lewis), 113 F.3d 1040, 1043 (9th Cir. 1997).

Here, the bankruptcy court's written Judgment After Trial does not specifically delineate the individual legal theories on which it is based. However, the judgment does incorporate by express reference, the "reasons set forth in the Court's oral findings." Judgment After Trial at 2:2-3. The use of the plural "reasons" indicates more than one basis for the judgment. The trial transcript evidences that those reasons specifically included the bankruptcy court's oral finding that "the doctrine

- 11 -

of equitable subordination should apply as well." Trial Tr. at 13:5. Indeed, the bankruptcy court made this particular alternative finding "to make a complete record in the event there is an appeal." Id. at 11:1-2. Therefore, the oral findings clearly evidence the bankruptcy court's intent to grant final judgment in favor of the Trustee on the alternative basis of equitable subrogation.

Joseph's anti-finality argument is not only inconsistent with the record, it is also inconsistent with his position on appeal. The Judgment After Trial did not delineate any specific theory on which relief was granted. Notwithstanding this silence, Joseph chose to appeal based on the assumption that the judgment involved a contractual determination. Nothing in the express language of the Judgment After Trial itself, however, supports the assertion that this basis for relief was the sole basis for relief or even a basis for relief. The Judgment After Trial was equally non-specific and silent as to the contract based subordination claim.

For these reasons, we conclude that the bankruptcy court granted a final judgment in favor of the Trustee on the alternative theory of equitable subrogation.

**2. Joseph Failed To Timely and Appropriately Raise The Equitable Subrogation Issue On Appeal.**

An appellant is required to serve and file a statement of issues on appeal. Fed. R. Bankr. P. 8006. Issues not included in the statement of issues may be deemed waived. Woods v. Pine Mountain, Ltd. (In re Pine Mountain, Ltd.), 80 B.R. 171, 173 (9th Cir. BAP 1987) (holding that appellant waived the issue of

- 12 -

bankruptcy court's refusal to consider parol evidence when the issue was not included in the statement of issues). An appellant must also raise and argue an issue in its opening brief or the issue will be waived. <u>Seven Words LLC v. Network Solutions</u>, 260 F.3d 1089, 1097 (9th Cir. 2001); <u>see also</u> <u>McLain v. Calderon</u>, 134 F.3d 1383, 1384 n.2 (9th Cir. 1998) (issue mentioned in statement of issues, but not discussed in brief is considered waived). Further, an argument waived by the failure to raise it in an appellant's opening brief cannot be raised for the first time in the appellant's reply brief. <u>Alaska Ctr. For Env't v. United States Forest Serv.</u>, 189 F.3d 851, 858 n.4 (9th Cir. 1999).

Here, Joseph's statement of issues does not mention equitable subrogation. The only issue raised is, "Did the bankruptcy court err in deciding that the [Bishay Trust Deed] was fully subordinate to the [WaMu Trust Deed] based on a Subordination Agreement that has not been found, without making a finding as to the wording or contents of that subordination agreement?" Appellant's Statement of Issue on Appeal at 2. Correspondingly, Joseph's opening brief discusses the same single issue, slightly re-phrased as, "The Subordination Agreement has not been found. Was it error to make that decision without determining the wording of that subordination agreement?" Appellant's Opening Brief (May 21, 2012) at 1. Again, no mention is made of equitable subrogation.

The Trustee raised this omission in his brief. Thus, Joseph, in his reply brief, eventually contended that the bankruptcy court erred in granting judgment on a theory of

equitable subrogation because the elements of equitable subrogation were not met.  Because Joseph raises this issue for the first time in his reply brief, he waived his right to appeal the bankruptcy court's judgment based on this alternative theory. For this reason alone, the trial court's judgment must stand.

**B.   The Bankruptcy Court Did Not Err, As A Matter Of Law, By Finding Subordination Without First Determining All The Terms And Conditions Of Subordination.**

Joseph contends that the subordination agreement at issue cannot be located and, therefore, that its terms are unknown. Joseph then argues that when the terms of a subordination agreement are not known, the subordination agreement is void.

In support of this position, Joseph briefly identifies cases that he alleges require contractual certainty in the subordination agreement context.  This case law, however, is either distinguishable or declarative of a non-controversial rule of law that is consistent with the bankruptcy court's legal determinations.

Joseph cites to <u>Resolution Trust Corp v. BVS Dev., Inc.</u>, 42 F.3d 1206 (9th Cir. 1994) for its statement that "the law is well settled that rights under an agreement of subordination extend to and are limited strictly by the express terms and conditions of the agreement."  <u>Id</u>. at 1214.  This point is well taken, but Joseph fails to even suggest how his admitted agreement to subordinate is in any way less than an agreement to full subordination to the WaMu Trust Deed.

Similarly, Joseph cites to <u>Weddington Prods., Inc. v. Flick</u>, 60 Cal.App.4th 793 (1998) (citing <u>White Point Co. v. Herrington</u>, 268 Cal.App.2d 458 (1968)) and <u>Roffinella v. Sherinian</u>,

- 14 -

179 Cal.App.3d 230, 239 (1986) to make the point that subordination provisions found to be uncertain, indefinite, and incapable of ascertainment by reference to an objective standard, have been deemed void for the uncertainty of a material provision. Id. at 817.[6] But again, Joseph fails to identify any point of uncertainty related to his agreement to subordinate, much less a material one.

Lastly, Joseph relies on Krasley v. Superior Court, 101 Cal.App.3d 425, 430 (1980) to suggest that when a subordination agreement is uncertain, trade usage and custom cannot be used to fill the gaps. The facts of Krasley, however, are far from the facts here. The trade usage discussion arose in another context and pertained to the court's determination that a document entitled a "counter counter offer" could not be treated as an acceptance of a prior offer. Id. The subordination discussion in Krasley related to an alternative basis for concluding that a contract did not arise. The Krasley court found that inclusion of the term "Seller to subordinate to a Construction Loan . . . ." was not sufficiently specific to bind the elderly and ill sellers who responded only with a counter offer. Id. Joseph, in contrast, knew the loan as to which his subordination agreement applied.

In summary, Joseph's cases all concern the contractual requirement of certainty, in some cases in the subordination agreement setting. These rules generally apply to deny

---

[6] Neither Weddington Prods. nor White Pointe Co. are directly applicable on the facts. They both refer to subordination agreement cases, but do not analyze the enforceability of a subordination clause.

- 15 -

enforcement of a subordination agreement where a party agreed to subordinate in the future to an unknown amount of additional security and where material deal terms of that future loan are unknown. The certainty requirements then operate to limit the scope of an otherwise open ended agreement to only the amount that was within the subordinating parties' objective intent at the time of contracting. Here, Joseph never states that his objective intent was anything other than full subordination.

Under California law, contract formation requires mutual consent of the parties. Cal. Civ. Code § 1561; 1 Witkin Summary of California Law (10th ed. 2005) Contracts, § 116 p. 155. Such mutual consent may be determined based on the reasonable meaning of the words and actions of the parties. Weddington Prods., 60 Cal.App.4th at 811. The contract's terms must be certain in material respects, but the existence of minor areas of disagreement will not render the contract void and entirely unenforceable. Id. at 811-12. Consistent with the general requirements of California law in the area of contracts, a subordination agreement must be interpreted to enforce the objective intent of the parties. Bratcher v. Buckner, 90 Cal.App.4th 1177, 1186 (2001).

Courts are cautious when asked to enforce agreements to subordinate to uncertain and future financing of unknown terms. See Roskamp Manley Assocs., Inc. v. Davin Dev. & Inv. Corp., 184 Cal.App.3d 513 (1986). A subordination agreement, notwithstanding, may be enforceable even in the absence of absolute certainty as to all contract terms. In Resolution Trust Corp., the subordinating party was a seller who took back a loan

and security from the buyer and also agreed to subordinate to future construction financing. 42 F.3d at 1210. The Resolution Trust Corp. court found the underlying subordination agreement enforceable despite some lack of certainty as to terms of this financing at the time of subordination. Id. at 1214. See also Int'l Mortg. Bank v. Eaton, 39 Cal.App. 39 (1918) (holding that an executed agreement to subordinate was enforceable where there was no specification of interest rate, subordinated amount, or use of the future senior loan proceeds.) In Krasley, in contrast, the court found no contract and no subordination agreement where the agreement was entirely open-ended. 101 Cal.App.3d at 431. In short, there are situations where the law will not enforce a subordination agreement because the terms are so uncertain that the court cannot find a meeting of the minds. California law, however, does not require 100% certainty.

Joseph's situation is not analogous to the Krasley facts. The bankruptcy court determined as a factual matter that Joseph's testimony evidenced an objective intent to subordinate the Bishay Trust Deed to the WaMu Trust Deed. It is clear that Joseph knew that the WaMu loan would be used to repay existing loans secured by already senior trust deeds. Thus, this determination leaves no real ambiguity regarding its scope.

And, perhaps more importantly, Joseph never specifies any unknown feature of this subordination. Having conceded that he subordinated his trust deed, the burden shifted to Joseph to specify any area where he did not agree to subordination and where, as a result, subordination cannot be required. He could not remain silent and prevail.

Therefore, the bankruptcy court did not err in finding that Joseph subordinated the Bishay Trust Deed to the WaMu Trust Deed even though he alleges that unspecified terms of the subordination agreement remain unclear. Enough is known to make clear that subordination occurred, and there is no evidence of a material term in dispute.

**C.    The Bankruptcy Court Did Not Err, As A Matter Of Fact, By Finding The Bishay Trust Deed Fully Subordinate To The WaMu Trust Deed.**

The Pre-Trial Order describes the relevant trial issues of fact as:

> 3.    Whether Joseph Bishay has agreed that his deed of trust is subordinate to that of the Washington Mutual Bank deed of trust.
> 4.    Whether Joseph Bishay agreed to subordinate his deed of trust to the Washington Mutual Deed of trust obtained by Marsil Bishay against the Subject Property.

Pre-Trial Order at 6.

It also contained stipulated facts that evidence an agreement to subordinate. Admitted facts which are agreed upon in a pre-trial order give rise to an inference that must be rebutted by opposing evidence. Harding v. Hall (In re Hall), 2006 WL 6810950, *2 (9th Cir. BAP Aug. 14, 2006); see also Jauregui v. City of Glendale, 852 F.2d 1128 (9th Cir. 1988) (recognizing that facts admitted by the defendant in a pre-trial order established plaintiff's prima facie case which gave rise to a presumption requiring evidentiary rebuttal). Joseph fails to identify any alleged limitation as to the extent of his admitted agreement to subordinate. Thus, the bankruptcy court did not err in finding that Joseph entirely subordinated the Bishay Trust Deed based on the admitted facts in the Pre-Trial Order.

On appeal, Joseph does not directly contest any of the bankruptcy court's findings of fact. Indeed, as they are based on his stipulations in the Pre-Trial Order, it is difficult to see how he could do so. As the Trustee correctly points out, however, Joseph's statement of the issue on appeal can be interpreted in a number of ways, and Joseph may argue that the bankruptcy court erred in finding that he fully rather than partially subordinated.

In particular situations, where a subordination agreement relates to an unknown future indebtedness, the subordinating party may be held to have only partially subordinated to the amount that was within its objective intent at the time of contracting. See generally Wells Fargo Bank v. Neilsen, 178 Cal.App.4th 602, 615-17 (2009) (limiting subordination amount to that which was within the objective intent of the subordinating lender in a "circuity of liens" context). Here, however, there is no ambiguity in the evidence; the bankruptcy court relied on Joseph's own testimony and agreement in its determination that Joseph subordinated the Bishay Trust Deed and was in second position behind the entirety of the WaMu Trust Deed.

This ultimate fact is evidenced by Joseph's admitted testimony that: " . . . he subordinated his trust deed to the Washington Mutual Deed of trust," (Pre-Trial Order at 4:11-12) and that: "he understood that his deed of trust was in second position behind the new deed of trust obtained by Marsil Bishay in favor of Washington Mutual." Pre-Trial Order at 4:18-20. Thus, the bankruptcy court correctly found that subordination

occurred.

It is also clear on this record that Joseph knew in connection with this general agreement to subordinate that his mother would use the WaMu Loan proceeds to pay off existing senior liens and that WaMu would, thus, enjoy the same priority over his lien that was enjoyed by the prior senior lenders. Joseph offers no counter evidence. Therefore, the record supports the bankruptcy court's determination that Joseph objectively intended to fully subordinate. Again, Joseph advances no evidence to the contrary.

## CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the bankruptcy court.